# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2590 | **DATE** | 9/19/2002 |
| **CASE TITLE** | AERO PRODUCTS INTERNATIONAL, INC. vs. INTEX CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to 10/30/02 at 9:00 a.m. Defendants' answer to complaint to be filed by 10/28/02. Counsel is granted leave to file pro hac vice appearance. Enter Memorandum Opinion And Order. Defendants' motion to dismiss on the basis of lack of personal jurisdiction is granted with respect to defendant Intex Corporation only and denied with respect to all other defendants. Defendants' motion to dismiss for improper venue is denied, and defendants' motion to transfer this case to the U.S. District Court for the Central District of California is denied.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | number of notices | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | SEP 2 0 2002 | | |
| ✓ | Docketing to mail notices. | date docketed | | 21 |
| | Mail AO 450 form. | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | date mailed notice | | |
| LG | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

**DOCKETED**

SEP 2 0 2002

AERO PRODUCTS INTERNATIONAL, INC. )
a Florida Corporation, and )
ROBERT B. CHAFFEE, an individual, )
                                      )
         Plaintiffs, )
                                      )       **No. 02 C 2590**
       v. )
                                        )       **Judge John W. Darrah**
INTEX CORP., a California corporatio; INTEX )
RECREATION CORP., a California Corporation; )
QUALITY TRADING INC., a California )
corporation; and WAL-MART STORES INC., a )
Delaware corporation )
                                      )
         Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Aero Products International ("Aero Products") and Robert B. Chaffee ("Chaffee"),

filed suit against Defendants, Intex Corporation ("Intex"), Intex Recreation Corporation ("Intex

Recreation")[1], Quality Trading Incorporated ("Quality Trading"), and Wal-Mart Stores Incorporated

("Wal-Mart"), alleging: patent infringement under 35 U.S.C. § 271; federal trademark infringement

under sections 31(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a); a violation

of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510 *et seq.*; a violation of the

Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS § 505 *et seq*; and a

violation of common law unfair competition.

Currently before the Court are Defendants' Motion for Dismissal for Lack of Jurisdiction,

---

[1] Plaintiffs have dismissed Defendants Intex Plastics Corp., Intex Properties Corp., and IPC
Corinth Division Inc., pursuant to Federal Rule of Civil Procedure 41(a)(1)(i).



Motion for Dismissal for Improper Venue, and, in the alternative, Defendants' Motion to Change Venue.

## BACKGROUND

Chaffee is the inventor and owner of United States Patent No. 5,367,726 ("'726 Patent"). The patent is for a "pneumatic support system," which is a "portable, inflatable support system, and a portable inflator for use with such a system." (Pl. Compl. Ex. A). The adjustable inflation system is used to automatically inflate mattresses for a predetermined time, or until a predetermined pressure is achieved in the mattress. Aero Products is the exclusive licensee of the '726 Patent and has the right to enforce the patent against infringers. Aero Products also owns the federally registered trademark, ONE TOUCH. The trademark is for inflatable mattresses with adjustable inflation control.

Intex is based in California and has numerous subsidiaries, including Intex Recreation. Intex does not transact any business and is not involved in the distribution or sales activities of its subsidiary, Intex Recreation. Intex has no involvement in the manufacture, use, distribution, offer for sale, or sale of the products involved in the instant suit. Intex Recreation is involved in the marketing sale of the product alleged to infringe on Plaintiff's patent.

Intex has a website that is found at the domain www.intexcorp.com ("intexcorp.com"). This website was not designed and is not maintained by Intex. However, the website remains under Intex's ultimate control. The intexcorp.com website is marked with "Copyright 2001 Intex Recreation Corp". No information is exchanged between the user and Intex through the intexcorp.com. website.

Once on the intexcorp.com website, users are not able to directly purchase products from Intex. However, the website contains a link to "order accessories online". Such accessories include products marketed and sold by Intex's subsidiaries. After clicking on this link, users are directed to a different website, www.intexstore.com ("intexstore.com"), a website that Plaintiffs do not allege is owned by Intex Corp. This website also contains a copyright to Intex Recreation. Once on the intexstore.com website, users have the opportunity to purchase accessories and replacement parts for the inflatable mattresses.

The intexcorp.com website also contains links to several types of products, including a product link to "Comfort-Rest Airbeds". After clicking on the "Comfort-Rest Airbeds" link, the user is directed to www.intex.corp.com/products/airbeds. No information is exchanged, and the products are not ordered from this website. The website also contains the link to "order accessories online". The website does not contain the Intex Recreation Corp. copyright mark. The website contains information on several different types of air mattresses and offers a link to www.qualityinflatables.com.

Quality Trading, a California corporation, operates websites located at www.qualitytrading.com, www.qualityinflatables.com (qualityinflatables.com"), and www.portablebeds.com.

The Complaint alleges that Intex, Intex Recreation, Quality Trading, and Wal-Mart have used and continue to use the ONE TOUCH mark in the advertising, offer, and sale of inflatable mattresses with the adjustable inflation control technology. The Plaintiffs allege that Defendants have created the impression that the inflatable mattresses originate with, or are sponsored by, licensed by, connected with, or are otherwise endorsed by Aero Products. Plaintiffs also allege that Intex, Intex

3

Recreation, and Quality Trading have advertised inflatable air mattresses having inflation control in the Northern District of Illinois via their respective websites using the ONE TOUCH mark. Furthermore, Intex sells inflatable air mattresses having adjustable inflation control and embodying technology protected by the '726 Patent to Wal-Mart and Quality Trading.

## ANALYSIS

*Motion to Dismiss for Lack of Personal Jurisdiction*

Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. *See Steel Warehouse of Wisc., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). When deciding whether the plaintiff has made a necessary showing, a court can look to affidavits and exhibits submitted by each party. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) (*Turnock*). When determining whether the plaintiff has met the burden of establishing a prima facie case of jurisdiction, this Court must take jurisdictional allegations in the complaint as true, unless controverted by the Defendant. *See Turnock*, 816 F.2d at 333. Additionally, all factual disputes must be resolved in favor of the plaintiff. *Turnock*, 816 F.2d at 333. Jurisdictional allegations in the complaint are taken as true, unless controverted by the defendant's affidavits or exhibits, and any factual disputes must be resolved in favor of the plaintiff. *See Turnock*, 816 F.2d at 333.

Plaintiffs allege patent infringement; therefore, Federal Circuit law is controlling with deference given to the state's highest court to determine whether a defendant is amenable to process in the forum state. *LSI Indus. Inc. v. Hubbell Lighting*, 232 F.3d 1369, 1371 (Fed. Cir. 2000) (*LSI Indus.*) A determination of whether an Illinois court would have jurisdiction requires an examination of three sources of law: "(1) state statutory law, (2) state constitutional law, and (3) federal constitutional law." *RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) (*RAR*).

Under Illinois law, a court can have personal jurisdiction over a non-resident via the state's long-arm statute. 735 ILCS 5/2-209. The statute permits the exercise of jurisdiction over claims that arise out of a number of enumerated acts. 735 ILCS 5/2-209(a). The statute also provides that an Illinois court may exercise jurisdiction on any basis permitted by the state or federal constitution. 735 ILCS 5/2-209(c). Therefore, the statute authorizes the exercise of personal jurisdiction by the Illinois courts to the fullest constitutional limit, and the statutory analysis collapses into a two-prong analysis: one based on the Illinois Constitution, and one based on the federal Constitution. *RAR*, 107 F.3d. at 1276.

The Due Process Clause permits an Illinois court to exercise jurisdiction over a non-resident defendant only if the defendant has had "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), *quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940); *Neuman & Assoc. v. Florabelle Flowers*, 15 F.3d 721, 725 (7th Cir. 1994). This determination depends on whether the plaintiff asserts general or specific jurisdiction against the defendant. *RAR*, 107 F.3d at 1277.

"General jurisdiction ... is for suits neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has 'continuous and systematic general business contacts' with the forum state. *RAR*, 107 F.3d at 1277. In the instant case, Plaintiffs have alleged that Quality Trading has maintained "systematic and continuous contacts" with Illinois through its websites. However, Plaintiffs do not allege that the other Defendants had "continuous and systematic" contact with Illinois. As a result of their failure to plead general jurisdiction in the complaint as to these Defendants, Plaintiffs have waived any claims of general jurisdictional

arguments against Intex, Intex Recreation, and Wal-Mart. Accordingly, this Court need only determine whether or not it has specific jurisdiction over these Defendants.

Specific jurisdiction "refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum.'" *RAR*, 107 F.3d at 1277, *quoting Helicopteros Nacionales de Columbia, S.A. v. Hall*, 486 U.S. 408 (1984). To determine whether specific jurisdiction exists, this Court must determine whether Intex has "purposefully established minimum contacts within [Illinois]" and whether those contacts would make personal jurisdiction reasonable and fair under the circumstances. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Defendant must have "purposely availed" itself of the privilege of conducting activities within the forum state, invoking the benefits and protections of its laws such that they would "reasonably anticipate being haled into court there." *Asahi-Metal Indus. Co. v. Superiour Court*, 480 U.S. 102, 109 (1987) (*Asahi-Metal*). In federal cases, the plaintiff must satisfy two elements for specific jurisdiction: (1) the plaintiff must show that the defendant is amenable to service of process; and (2) the plaintiff must establish that haling the defendant into court is consistent with the Fourteenth Amendment's due process clause. *LFG, LLC. v. Zapata Corp.*, 78 F.Supp.2d 731, 734 (N.D. Ill. 1999). Amenability to service of process is governed by Illinois' long-arm statute.

### 1. Amenability to Service

As noted above, the Illinois long-arm statute is coextensive with federal due process requirements; if the contacts between the defendants and Illinois are sufficient to satisfy federal due process requirements, then the requirements of the Illinois long-arm statute have been met. *See Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995). Thus, if jurisdiction is improper under the

United States Constitution, then this Court cannot exercise jurisdiction over the Defendants. *See RAR*, 107 F.3d at 1276.

### 2. Due Process

A three-prong test for determining if specific jurisdiction exists: (1) whether the defendant purposefully directed or availed its activities at the residents of the forum; (2) whether the claim arises out of or is related to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995) (*Akro*); *Hollyanne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307-1308 (Fed. Cir. 1999) (*Hollyanne*); *Amsleep, Inc. v. American Mattress Centers, Inc.*, 2002 WL 1400369, No. 01 C 6456 (N.D.Ill. June 27, 2002). If all of the above tests are met, then this Court can exercise jurisdiction over the Defendants.

Plaintiffs allege that this Court maintains personal jurisdiction over Intex based on a "stream of commerce" theory. They argue that since "the Intex Corp. website constitutes an internet presence for Intex Recreation products," that the "activities of Intex Corp. and Intex Recreation are clearly intertwined."

Despite the fact that Intex is the parent company of Intex Recreation, for the sake of determining jurisdiction, the activities of the entities must be considered separately. *LaSalle Nat'l Bank v. Vitro, Sociedad Anonima,* 85 F.Supp.2d 857, 862 (N.D. Ill. 2000) (*LaSalle*). In analyzing whether or not this Court has jurisdiction over Intex and Intex Recreation, the Court must look to whether or not either Intex's or Intex Recreations' placement of the inflatable mattresses into the stream of commerce or their internet advertisement of the products indicated that each entity purposefully directed their actions towards Illinois. *Asahi-Metal*, 480 U.S. at 112.

7

Placing a product into a "stream of commerce" can subject an entity to personal jurisdiction in a forum where the product ended up. *Beverly Hills Fan v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (*Beverly Hills Fan*). However, simply demonstrating that a defendant placed a product into the stream of commerce is not enough to hold the defendant liable:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi-Metal*, 480 U.S. at 112. Alone, the stream of commerce theory is not enough; plaintiffs must demonstrate that Intex has purposefully taken action directed at Illinois.

Plaintiffs also allege that Intex has advertised its products in this District through a website located at www.intexcorp.com using the ONE TOUCH mark. Intex contends, however, that in spite of the fact that the intexcorp.com domain is registered to Intex, it has "never been involved with the creation, development, or maintenance of the website." (2d Smith Declaration at ¶4). Despite Intex's ownership of the website domain, based on its lack of involvement in the design and maintenance of the website, it should not have reasonably anticipated being haled into court in Illinois, as required by the principles of due process.

In addition to looking at the Internet site as an advertisement in the stream of commerce context, an internet site alone can be a means of exercising jurisdiction. *Euromarket Designs, Inc.*

*v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 837 (N.D.Ill. 2000) (*Euromarket*). In weighing the issue

of personal jurisdiction in the context of the Internet, courts typically use a sliding scale analysis to

ascertain what level of Internet interaction subjects a defendant to personal jurisdiction. *Euromarket*,

96 F.Supp. 2d at 837; *School Stuff, Inc. v. School Stuff, Inc.*, No. 00 C 5593, 2001 WL 558060 at *3

(N.D. Ill. May 21, 2001) (*School Stuff*). The analysis consists of three levels: (1) where the defendant

conducts business over the Internet through its active website; (2) where the defendant maintains an

interactive website; and (3) where the defendant maintains a passive website. *Euromarket*, 96

F.Supp.2d at 837-838.

The first category consists of "situations where a defendant clearly does business over the

Internet. If the defendant enters into contracts with residents of a foreign jurisdiction ... over the

Internet, personal jurisdiction is proper." *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952

F.Supp. 1119, 1124 (W.D. Pa 1997) (*Zippo*). Websites in this category are "interactive" and allow

for an transaction between the user and the website owner. *Euromarket*, 96 F.Supp.2d at 837.

The second category "is occupied by interactive websites where a user can exchange

information with the host computer. In these cases, the exercise of jurisdiction is determined by

examining the level of interactivity and commercial nature of the exchange of information that

occurs on the website." *Zippo*, 952 F.Supp. at 1124. While websites belonging to this category are

not fully interactive, they do not permit as much interaction as those in the first category.

*Euromarket*, 96 F.Supp.2d at 838.

The final category consists of "situations where a defendant has simply posted information

on an Internet website which is accessible to users in foreign jurisdictions. A passive website that

does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." *Zippo*, 952 F.Supp. at 1124.

Jurisdiction has been exercised over a defendant who had used a website as a promotion for an upcoming Internet service. *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D. Mo. 1996) (*Maritz*). While the interactive service was not fully operational, website users had the opportunity to enter information necessary to join a mailing list. The court found that the defendant's conduct via the website was "clearly intended as a promotion ... and solicitation ... suggest[ing] that the defendant is purposely availing itself of the privilege of conducting activities in [the forum state]." *Maritz*, 947 F.Supp. at 1333. *See also Euromarket*, 96 F.Supp.2d at 838.

However, personal jurisdiction did not exist where a website had the following features: (1) an e-mail button to obtain financial information on the company; (2) an e-mail button for information on the company; (3) a customer service page that allowed individuals to directly interact with customer service representatives; (4) access to on-line catalogs of the company's products; and (5) a list of contact persons and contact information for further information on the company's products. *LaSalle*, 85 F.Supp.2d at 862. The court concluded that while "the above features do evidence a minimal level of 'interactivity,' there is no interactivity with the action taken by [the defendant] as a result of individual communication." *LaSalle*, 85 F.Supp.2d at 862. Yet, the court also noted that the website provided "no suggestion that [the defendant] is using the website to sell products directly over the website." *LaSalle*, 85 F.Supp.2d at 862.

Likewise, in *Transcraft Corp. v. Doonan Trailer Corp.*, No. 97 C 4943, 1997 WL 733905 (N.D. Ill. Nov. 17, 1997) (*Transcraft*), the website in question provided dealer and sales information, including phone numbers, addresses, and e-mail addresses. The court granted a motion to dismiss,

10

comparing the website to a national advertisement that would not normally create jurisdiction in Illinois.

Plaintiffs' allegations indicate that Intex's website is not fully interactive, as users are not able to purchase products directly from the website. Yet, the allegations also indicate that the website is not entirely passive either. Thus, this Court must analyze the website under the middle category to determine whether or not the website is sufficiently interactive to permit this Court to exercise jurisdiction. This analysis is particularly fact dependent.

The intexcorp.com website is not designed or maintained by Intex; however, it remains under Intex's ultimate control. Users are not able to directly purchase products from the Intex website. Only when the user goes to the intexstore.com website, do they have the opportunity to purchase accessesories and replacement parts for the inflatable mattresses. Once on the intex.corp.com/products/airbeds website, users have the opportunity to gather information on air mattresses and to link to a site where air mattresses may be purchased (qualityinflatables.com).

Plaintiffs allege that Intex has "sought to hide their infringing activities through a series of similarly named entities... [and] it is clear that Intex Corp. acts in concert with Intex Recreation to advertise and sell infringing inflatable air mattresses." However, because users are not able to purchase items directly from the intexcorp.com website, the site functions like an advertisement, in which a user can merely gain information about the product and be instantly directed to a different site to purchase the products. No information is exchanged between the user and intexcorp.com. And while a reasonable user might think that the intexcorp.com website and the intexstore.com website are one in the same, the intexcorp.com website is repeatedly marked with evidence that it is under the control of Intex Recreation not Intex. Furthermore, while users can link to "order

11

accessories online," after clicking on this link, users are directed to www.intexstore.com, a website that Plaintiffs do not allege is owned by Intex Corporation and which is otherwise separate and distinct from that entity's website.

Therefore, Intex's website's status as an advertisement is not enough to determine that this Court cannot exercise jurisdiction over Intex. "[A]dvertisements on the Web can subject a defendant to personal jurisdiction if there is evidence that the defendant intended that its advertisement reach a particular state." *Transcraft*, 1997 WL 733905. Generally, national advertisements (including those on the Internet) are insufficient to subject a defendant to jurisdiction in Illinois. *See IDS Life Ins. Co. v. SunAmerica, Inc.*, 958 F.Supp. 1258, 1268 (N.D. Ill. 1997); *Transcraft*, 1997 WL 733905.

In this instance, there is no evidence that the intexcorp.com advertisement was specifically directed towards users in Illinois, nor are there allegations that Intex targeted the website at Illinois users. Plaintiffs also do not provide evidence of instances in which residents of Illinois purchased items after visiting the intexcorp.com website.

Because Plaintiffs have not met the burden of establishing a *prima facie* showing of personal jurisdiction, this Court cannot exercise jurisdiction over Intex Corporation.

Intex Recreation argues that this Court lacks jurisdiction over it because it has not purposely established contacts in Illinois.

In the instant case, Defendant Intex Recreation has sold inflatable mattresses to Wal-Mart and Quality Trading. While neither of these entities reside in the Northern District of Illinois, Plaintiffs allege that Wal-Mart and Quality Trading have distributed the products to areas, including

12

those in the Northern District of Illinois, thus placing the infringing mattresses into a "stream of commerce".

As discussed above, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi-Metal*, 480 U.S. at 112. However, in the instant case, Plaintiffs do not merely allege that Intex Recreation has placed the infringing products into the stream of commerce. They have provided uncontroverted evidence that Intex Recreation has advertised to residents of Illinois via the Internet and marketed the product through distributors who have agreed to serve as the sales agent in Illinois. As such, Intex Recreation has purposely availed itself of the privilege of conducting activities within Illinois, and specifically within the Northern District, such that they should have reasonably anticipated being haled into court here. Because the claims arise out of Intex Recreation's activities in Illinois and the exercise of jurisdiction is reasonable and fair, this Court can exercise jurisdiction over Intex Recreation. *See Akro*, 45 F.3d 1541 at 1545-46.

As to Defendant Quality Trading, Plaintiffs allege that Quality Trading is subject to personal jurisdiction in Illinois because it maintains and operates a website that allows Illinois residents to purchase infringing inflatable air mattresses. Plaintiffs further contend that Quality Trading's website has utilized Aero's registered ONE TOUCH trademark in soliciting sales.

"No court has ever held that an Internet advertisement alone is sufficient to subject a party to jurisdiction in another state. In each case where personal jurisdiction was exercised, there [was] something more to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Vitullo v. Velocity Powerboats, Inc.* No. 97 C 8745, 1998 WL 246152 at *5. (N.D. Ill. April 27, 1998), *quoting Panavision Int'l, L.P. v. Toeppen*, 141 F.3d

13

1316, 1321 (9th Cir. 1998) (internal quotations omitted). As discussed above, courts have used a sliding scale approach to determining whether an entity's web presence will subject it to the jurisdiction of a court. *See Euromarket*, 96 F.Supp.2d at 837.

In the complaint, Plaintiffs allege that Quality Trading "advertises and sells Intex inflatable air mattresses through a distributorship agreement". Further, Plaintiffs contend that Quality Trading operates numerous websites, "all of which *sell* Intex inflatable air mattresses over the Internet." Finally, Plaintiffs allege that Quality Trading's websites "sell and offer to sell to consumers in this District inflatable air mattresses having adjustable inflation control and embodying technology protected by the '726 patent."

The allegations made by Plaintiffs with regard to Quality Trading are sufficient to permit an inference that Quality Trading's website is of a sufficiently interactive nature that permits this Court to exercise jurisdiction over Quality Trading. *Euromarket*, 96 F.Supp.2d at 837-838.

Plaintiffs allege that Defendant Wal-Mart is subject to personal jurisdiction because it has sold inflatable air mattresses supplied by Intex Recreation through its retail stores throughout Illinois, including at least one in the Northern District of Illinois.

Applying the three-part test from *Akro*, this Court can exercise jurisdiction over Wal-Mart. First, Wal-Mart purposefully availed its activities at the residents of the Northern District of Illinois by virtue of its maintaining a store in the district. Wal-Mart does business in the Northern District and, thus, can reasonably anticipate being haled into court here. Second, the instant claim is related to the activities undertaken by Wal-Mart in the Northern District. Plaintiffs have provided evidence, undisputed by Defendants, that at least one Wal-Mart located in Illinois, and specifically within the

Northern District, sells the allegedly infringing inflatable air mattress. Finally, the assertion of personal jurisdiction over Wal-Mart is reasonable and fair given the allegations.

*Motion to Dismiss for Improper Venue*

Defendants argue that this case should be dismissed for improper venue because this Court does not have personal jurisdiction over Defendants.

Venue is appropriate in a judicial district in which "(1)... any defendant resides, if all defendants reside in the same state, (2) ... a substantial part of the events or omissions giving rise the claim occurred, or a substantial part of the property that is subject of the action is situated, or (3) ... any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b) (2002).

A corporation resides in any district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391. In multi-district states, however, statute requires a hypothetical analysis of personal jurisdiction confined to the district of the suit. 28 U.S.C. § 1391(c); *Bicicletas Windsor, S.A. v. Bicycle Corp. of America*, 783 F.Supp. 781, 785-786 (S.D.N.Y. 1992).

Because jurisdiction is appropriate in Illinois for Defendants Intex Recreation, Quality Trading, and Wal-Mart, venue is appropriate if the exercise of jurisdiction within Illinois holds specifically for the Northern District. Given the discussions above, this Court finds that a hypothetical analysis of personal jurisdiction confined to the Northern District of Illinois indicates that venue in this district is proper under 28 U.S.C. § 1391.

*Motion to Transfer Venue*

In the alternative, Defendants have moved for this action to be transferred to the Central District of California. In general, "[f]or the convenience of the parties and witnesses, in the interest

of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A transfer is proper if: (1) venue is proper in both the transferee and transferor courts; (2) it is for the convenience of the parties or witnesses; and (3) it is in the interest of justice. *Law Bulletin Publishing Co., v. LRP Publications, Inc.*, 992 F.Supp. 1014, 1017 (N.D. Ill. 1998) (*Law Bulletin*). District courts have broad discretion to grant or deny motions to transfer, and the burden is on the moving party to establish that the transfer is warranted. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (*Heller*).

As discussed above, Intex Recreation, Quality Trading, and Wal-Mart are all proper defendants in the Northern District of Illinois.

When evaluating the relative convenience of the parties and witnesses, the court considers: (i) the plaintiff's initial forum choice, (ii) the convenience of witnesses, (iii) the relative ease of access to other evidence, (iv) the situs of material events, and (v) the relative convenience of the parties in litigating in the respective forums. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D. Ill. 2000) (*Amoco*); *Georgouses v. Natec Resources, Inc.*, 963 F.Supp. 728, 730 (N.D. Ill. 1997) (*Georgouses*).

The plaintiff's initial choice of forum is usually afforded substantial deference, particularly when it is the plaintiff's home forum. The plaintiff's choice of forum should generally be supplanted by the court when trying the case in the plaintiff's chosen forum will result in vexation and oppression to the defendant that far outweighs the convenience to the plaintiff. *Kamel v. Hill-Rom Company, Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). However, there are other factors to consider, and the weight given to the plaintiff's choice can vary, depending on the circumstances of each individual case. *Georgouses*, 963 F.Supp. at 730; *Law Bulletin*, 992 F.Supp. at 1017.

In the instant case, Plaintiffs chose to bring suit in the Northern District of Illinois. Aero Products, the licensee of the '726 patent and the owner of the ONE TOUCH trademark, maintains its principal place of business in the Northern District of Illinois. Plaintiff Robert Chaffee resides in Boston and would, thus, be equally inconvenienced by this suit being heard in California instead of Illinois. Because deference is granted to the Plaintiffs' initial forum choice, this factor weighs in favor of denying Defendants' motion to transfer.

The convenience of the witnesses who will testify at trial is one of the most important factors when deciding on an appropriate forum. *Law Bulletin*, 992 F.Supp. at 1018. However, the defendant will not be granted a transfer merely by presenting a long list of witnesses and claiming their inconvenience. *Law Bulletin*, 992 F.Supp. at 1018. Courts go beyond simply looking at the number of witnesses and weighing the quality and nature of their proposed testimony. *Law Bulletin*, 992 F.Supp. at 1018. The defendant is obligated to specify particular witnesses to be called and explain the nature of their testimony. *Heller*, 883 F.2d at 1293. In order to overcome the deference to the plaintiff's forum choice on the issue of witness convenience, the defendant must show that the testimony of these particular witnesses is necessary to his case. *General Portland Cement Co. v. Perry*, 204 F.2d 316, 319 (7th Cir. 1953) (*General Portland*). As a practical matter, it is usually assumed that witnesses within the control of the parties, employees of the Defendants in this case, will appear voluntarily. Therefore, more attention should be given to the location of the non-party witnesses and those witnesses not within the control of the parties. *Spherion Corp. v. Cincinnati Financial Corp.*, 183 F.Supp.2d 1052, 1058 (N.D. Ill. 2002).

Because Intex Recreation is based in the Central District of California, it would be easiest for those witnesses if the case were to be tried in that district. Yet, Defendants have not offered

17

sufficient information to merit a transfer of this case due to the convenience of witnesses. As such, this factor weighs in favor of denying Defendants' motion.

Regarding the ease of access of other evidence, evidence for this action is likely to be found across the country. Plaintiff Chaffee is located in Boston, Massachusetts; Wal-Mart is headquartered in Arkansas; Aero Products is located in Illinois; Intex Recreation and Quality Trading are located in California. Because each of these parties will likely have information and evidence relevant to this action, California will not increase the overall ease of access to evidence. This factor weighs in favor of denying Defendants' motion.

Defendants note that the products are manufactured outside the United States and are imported by Intex Recreation into Los Angeles. However, because Intex Recreation and Quality Trading advertise the air mattresses via the Internet, the location of the injury to Aero Products is conceivably everywhere the Internet reaches. *See School Stuff*, 2001 WL 558050 at *5. Additionally, through their allegations, the situs of material events can be anywhere the Defendants Wal-Mart and Quality Trading, have sold the inflatable air mattresses. *See Beverly Hills Fan*, 21 F.3d at 1571. Thus, the Northern District of Illinois is equally as much the situs of material events as is the Central District of California. As such, this factor weighs in favor of denying Defendants' motion.

As to the relative convenience of the parties in litigating in the respective forums, as stated above, evidence and witnesses are likely to be spread out throughout several states, including Illinois and California. Accordingly, this factor does not weigh in favor of transferring venue.

The analysis of the interest of justice focuses on the efficient administration of the court system, as opposed to the private considerations of the litigants. *Amoco*, 90. F.Supp.2d at 961. This includes considering: (i) the relative familiarity of the courts with the applicable law, (ii) the relation

18

of the respective forums with the issue in the case, and (iii) the relative congestion of the court dockets. *Amoco*, 90 F.Supp.2d at 961; *Georgouses*, 963 F.Supp. at 730.

Three of the claims outlined in the complaint are made pursuant to federal law. Count I is a claim for patent infringement under 35 U.S.C. § 271; Count II is a claim for a violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); and Count III is a claim for a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Relative to these claims, this Court and the U.S. District Court for the Central District of California will be as familiar with the substantive, federal law. Three additional claims outlined are made under Illinois statutory and common law. This Court is at least as familiar with Illinois law as a court in the Central District of California. This factor does not weigh in favor of Defendants' Motion to Transfer Venue.

As discussed above, events bearing a relation to this cause of action have taken place in Illinois, California, and other areas of the country. This Court does not have reason to believe that the Central District of California has a relatively greater relation to the issues than does this Court. This factor weighs in favor of denying Defendants' Motion to Transfer Venue.

Lastly, Defendants' have shown that the relative congestion of the court dockets indicates that, on average, cases are resolved faster in the Central District of California. This factor weighs in favor of granting Defendant's motion and transferring this case to the Central District of California. In sum, however, the factors weigh against granting Defendants' motion to transfer this cause of action to the Central District of California.

## CONCLUSION

Based on the above, Defendants' Motion to Dismiss on the basis of lack of personal jurisdiction is granted with respect to Defendant Intex Corporation only and denied with respect to

19

all other Defendants. Defendants' Motion to Dismiss for Improper Venue is denied, and Defendants' Motion to Transfer this case to the United States District Court for the Central District of California is denied.

Dated: _September 19, 2002_

JOHN W. DARRAH
United States District Judge