# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2590 | **DATE** | 11/17/2003 |
| **CASE TITLE** | Aero Products Intl Inc vs. Intex Recreation Corp | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the defendants' motion for summary for summary adjudication of the unenforceability of U.S. Patent Nos. 5,367,726 and 5,267,363 and determination of intervening rights under 35 U.S.C. 41(c)(2) [55-1] is denied as to both issues. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 1 8 2003 | 100 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

**DOCKETED**

**NOV 1 8** 2003

AERO PRODUCTS INTERNATIONAL, INC., )
a Florida corporation, and )
ROBERT B. CHAFFEE, an individual, )
                                                    )
      Plaintiffs, )
                                                      )
     v. )        No: 02 C 2590
                                                      )
INTEX RECREATION CORP., )       Judge John W. Darrah
a California Corporation; )
QUALITY TRADING, INC., )
a California Corporation; and )
WAL-MART STORES, INC., )
a Delaware Corporation, )
                                                      )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

The Plaintiffs, Aero Products International, Inc. ("Aero") and Robert B. Chaffee, filed

suit against the Defendants, Intex Recreation Corporation ("Intex"), Quality Trading, Inc.

("Quality Trading"), and Wal-Mart Stores, Inc. ("Wal-Mart"). Presently before the Court is the

Defendants' Motion for Summary Judgment that the two patents are unenforceable: (1) for

failure to properly pay maintenance fees and (2) due to inequitable conduct. For the foregoing

reasons, the Defendants' Motion for Summary Judgment is denied as to both issues.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co.*

*v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal

*100*

purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts, for the purposes of this motion, taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def's 56.1") and exhibits, are as follows.

Chaffee is the inventor and owner of U.S. Patent No. 5,367,726 ("the '726 patent") and

U.S. Patent No. 5,267,363 ("the '363 patent"). Pl.'s 56.1 ¶¶ 1-2. Aero, formerly known as the RMF/DLO Group, is the exclusive licensee of the '726 and the '363 patents (together, "the patents-in-suit") with the right to enforce the same against infringers. Def.'s 56.1 ¶ 2; Pl.'s 56.1 ¶ 4. For the purposes of this motion, these two entities are the same. Bruce Sunstein, a partner at the firm of Bromberg and Sunstein, prosecuted the '726 patent for Chaffee. Pl.'s 56.1 ¶ 5.

Intex sells inflatable air mattresses to Quality Trading and Wal-Mart. Def.'s 56.1 ¶ 3. Quality Trading sells these air mattresses on a variety of web sites. Def.'s 56.1 ¶ 4. Wal-Mart sells these air mattresses in its retail stores located throughout the United States. Def.'s 56.1 ¶¶ 3, 5. The accused Intex products were first offered for sale in July of 2000. The first sale of any accused Intex products was in August of 2000. Def.'s 56.1 ¶ 16.

### The Licensing Agreements

On July 24, 1995, Chaffee and Aero entered into an agreement in which Chaffee granted Aero an exclusive license to practice the inventions claimed in the patents-in-suit. Pl.'s 56.1 ¶ 11. On July 1, 1996, Aero entered into an agreement with Coleman that granted Coleman a non-exclusive right to manufacture, market, and sell the specific products listed in paragraphs 1.1-1.5 of the agreement. Pl.'s 56.1 ¶ 12.

Although the sub-license agreement does not specifically mention the patents-in-suit, Coleman was granted the general right to any patents that were necessary for Coleman to make the licensed products. Pl.'s 56.1 ¶ 13. Chaffee was not involved with, or even aware of, the negotiation of the Coleman sub-license agreement. Pl.'s 56.1 ¶ 14. The Coleman sub-license ended on December 31, 1999. Throughout the entire period of the agreement, Coleman always maintained a work force of over 500 employees. Def.'s 56.1 ¶ 12.

3

Chaffee knew about the Coleman sub-licence at least as early as October 15, 1997, when Chaffee received a letter regarding Coleman royalties derived on the license of the '726 patent. Def.'s 56.1 ¶ 13. Chaffee may also have known that a sub-license with Coleman may have existed in spring of 1997, when he saw an article discussing a Coleman airbed product. Pl.'s 56.1 ¶ 15.

<em>Payment of Maintenance Fees</em>

The United States Patent and Trademark Office ("PTO") requires that issue fees and periodic maintenance fees be paid by the patentee. 35 U.S.C. § 151; 35 U.S.C. § 41. However, the PTO also allows "small entities" to pay reduced issue and maintenance fees. *E.g.*, 35 U.S.C. § 41(h)(1). Claims for small-entity status were filed on behalf of both Chaffee and Aero for the patents-in-suit. Pl.'s 56.1 ¶ 6. On February 5, 1997, a maintenance fee was paid for the '363 patent at the small-entity rate. Pl.'s 56.1 ¶ 7. On May 27, 1998, a maintenance fee was paid for the '726 patent at the small-entity rate. Pl.'s 56.1 ¶ 8.

On August 7, 2003, Sunstein filed petitions with the PTO to correct the maintenance fee payments, pursuant to 37 C.F.R. § 1.28(c), for the patents-in-suit. Pl.'s 56.1 ¶ 21. Around August 26, 2003, the PTO granted these petitions for the patents-in-suit. Pl.'s 56.1 ¶¶ 23-24.

<em>Chaffee's Alleged Inequitable Conduct</em>

On April 10, 2002, the Plaintiffs filed their complaint. Pl.'s 56.1 ¶ 25. The Defendants filed their Answer and Counterclaim on October 10, 2002. These pleadings did not contain any allegations of inequitable conduct. Pl.'s 56.1 ¶ 26. Defendants have not sought leave to amend their pleadings to include allegations of inequitable conduct. Pl.'s 56.1 ¶ 27.

Chaffee was unaware that a sub-license between Aero and another party could affect his patents' small-entity statuses. Pl.'s 56.1 ¶ 16. Chaffee also had no knowledge of Coleman's size at the time the maintenance fees for the patents-in-suit were paid. Pl.'s 56.1 ¶¶ 18-19. Moreover, Sunstein, Chaffee's attorney, was not aware of the Coleman sub-license until after Chaffee's deposition on July 17, 2003.

Chaffee, however, understood that licenses to large entities could affect a patentee's small- entity status. Def. Ex. F, Chaffee Dep. at 74-76. Furthermore, when paying a maintenance fee, Sunstein's practice was to verify a client's entitlement to small-entity status. Def. Reply Ex. A, Sunstein Dep. at 37, 122, 124-25.

## ANALYSIS

### *Maintenance Fee and Intervening Rights*

The Defendants contend that Chaffee's failure to pay the full maintenance fee, instead of the small-entity fee, after the patents-in-suit were licensed to Coleman, caused the patents to expire. Moreover, even if the patents did not expire, any damages the Plaintiffs seek are barred by the doctrine of intervening rights, embodied in 35 U.S.C. § 41(c), because the allegedly infringing acts occurred after Chaffee failed to pay the proper maintenance fee.

The PTO requires that periodic maintenance fees must be paid for by the patentee or the patent will expire. 35 U.S.C. § 41(b). Under certain circumstances, patentees can qualify for a discounted maintenance fee as a small entity. 35 U.S.C. § 41(h)(1). When a patentee erroneously pays maintenance fees as a small entity, he is allowed to correct that error by complying with 37 C.F.R. § 1.28(c). "If status as a small entity is established in good faith, and fees as a small entity are paid in good faith . . . and it is later discovered that such status was

established in error . . . the error will be excused" upon compliance with the remaining requirements of section 1.28(c).

Here, Chaffee erroneously paid small-entity maintenance fees for the patents-in-suit. However, Chaffee filed petitions to correct the maintenance fee payments, pursuant to 37 C.F.R. § 1.28(c), that were granted by the PTO. Therefore, the patents did not expire and are still enforceable against the Defendants.

Next, the Defendants argue that even if the patents-in-suit did not expire, they lapsed from the time Chaffee erroneously paid the small-entity fee until the PTO granted his section 1.28 petition. Therefore, any damages the Plaintiffs claim during that time period are barred by the doctrine of intervening rights. 35 U.S.C. § 41(c)(2) states:

> A patent, the term of which has been maintained as a result of the acceptance of a payment of a maintenance fee under this subsection, shall not abridge or affect the right of any person or that person's successors in business who made, purchased, offered to sell, or used anything protected by the patent within the United States . . . prior to the acceptance of a maintenance fee under this subsection . . . .

This language is almost identical to the language used in 35 U.S.C. § 252, which grants intervening rights in situations involving reissue patents. *E.g.*, *Haden Schweitzer Corp v. Arthur B. Myr Indus., Inc.*, 901 F. Supp. 1235, 1238-39 (E.D. Mich. 1995) ("*Haden*"). Although the Federal Circuit has yet to rule on whether section 41(c)(2) grants intervening rights to alleged infringers if a patentee erroneously pays maintenance fees as a small entity, some district courts have considered this issue.

The narrowest view of the intervening rights doctrine was taken by the district court in *Jewish Hospital v. IDEXX Laboratories*, 951 F. Supp. 1 (D. Mo. 1996). The court relied upon 37 C.F.R. § 1.28(c) in deciding that the intervening rights defense of section 41(c)(2) is not available

when the patentee mistakenly paid the small-entity maintenance fee. *Jewish Hosp.*, 951 F. Supp. at 2. "[T]he PTO has adopted specific procedures for correcting any error in claiming small- entity status. *See* 37 C.F.R. § 1.28(c). These procedures do not contemplate a lapse of the patent, but rather permit correction of the error if the status was originally established in good faith."

The broadest view of the intervening rights doctrine of section 41(c)(2) was taken by the district court in *Haden*. There, the court held that intervening rights under section 41(c)(2) are available to alleged infringers if a patentee erroneously pays a small-entity maintenance fee. *Haden*, 901 F. Supp. at 1242-43. The alleged infringer did not need to prove that it actually relied upon the erroneous small-entity fee to obtain intervening rights. However, the Federal Circuit limited the value of the *Haden* decision by favorably citing the *Jewish Hospital* court's holding that "37 C.F.R. § 1.28 governs the correction of an erroneous claim of small entity status and the erroneous payment of the small entity issue fee." *DH Tech., Inc. v. Synergystex Int'l, Inc.*, 154 F.3d 1333, 1342 (Fed. Cir. 1998).

In the case at bar, Chaffee submitted a Rule 1.28(c) petition to correct an error in claiming small-entity status when paying a maintenance fee, which the PTO granted. Rule 1.28(c) does not provide for intervening rights; instead, this rule excuses any deficiency in erroneous, good faith, small-entity maintenance fee payments. Therefore, Chaffee's erroneous small-entity fee payments are excused, and intervening rights are not available.

Even if the doctrine of intervening rights was found to be controlling, the Defendants have not presented any affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate, through specific evidence, that no genuine issue of material fact exists showing that

7

they detrimentally relied on Chaffee's erroneous maintenance payment. Section 41(c)(2) "was intended to protect the rights of those who, *in reliance upon the lapse,* first began using the claimed invention or who first took steps to begin using it during the lapse period." *Fonar Corp.*, 107 F.3d 1543, 1554 (Fed. Cir. 1997)) (emphasis added). Under these circumstances, it would be unjust to favor a party who allegedly infringed a patent without relying on its lapsed status over a patentee who, according to the PTO, proceeded in good faith in correcting the mistaken maintenance fee payment. Therefore, the Defendants' Motion for Summary Judgment on this issue is denied.

### Inequitable Conduct

The Defendants also seek to use the doctrine of inequitable conduct to invalidate the patents-in-suit. However, inequitable conduct is an affirmative defense that must be pled with "specific allegations as mandated by Federal Rule of Civil Procedure 9(b)." *Heidelberg Harris Inc. v. Mitsubishi Heavy Indus. Inc.*, 42 U.S.P.Q.2d 1369, 1372 (N.D. Ill. 1996). Here, the Defendants did not plead this affirmative defense in their answer; they concede that their original pleadings fail to meet the specificity requirement of Rule 9(b).

The Defendants, in their reply brief, now seek leave to amend their answer to include inequitable conduct as an affirmative defense. Rule 15(a) states "a party may amend the party's pleading only by leave of the court . . . and leave shall be freely given." Fed. R. Civ. P. 15(a). "Leave to amend may be denied where it would . . . prejudice the opposing party . . . ." *Heidelberg Harris Inc.*, 42 U.S.P.Q.2d at 1372 (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, the Plaintiffs claim that they will be prejudiced by allowing the Defendants leave to amend because: (1) the Plaintiffs were unfairly surprised and (2) the Defendants will be able to further stall resolution of this case. The Defendants answer that the evidence concerning this claim was in the Plaintiffs' control; thus, the Plaintiffs were not surprised because the Defendants would not be able to learn of this defense until after discovery. Moreover, the Defendants state they could amend their Answer without significant delay. Therefore, the Plaintiffs will suffer no prejudice if the Defendants are granted leave to amend their Answer.

The issue of inequitable conduct as a basis for summary judgment is not now presently before the Court. The Defendants are granted to leave to so amend their Answer.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is denied. The Defendants are given leave to amend their Answer to include the affirmative defense of inequitable conduct.

Dated: _November 17, 2003_

_____
JOHN W. DARRAH
United States District Judge