# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2590 | **DATE** | 7/15/2004 |
| **CASE TITLE** | Aero Products Intl. Vs. Intex Recreation Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in the attached memorandum opinion and order, plaintiffs are entitled to double patent damages, for a total of $5,900.000.00, and attorney's fees. Enter Memorandum Opinion and Order.

(11) ■   [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 16 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 220 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AERO PRODUCTS INTERNATIONAL, INC., )
a Florida corporation, and )
ROBERT B. CHAFFEE, an individual, )
)
Plaintiffs, )
)
v. ) No: 02 C 2590
)
INTEX RECREATION CORPORATION., ) Judge John W. Darrah
a California corporation; )
QUALITY TRADING, INC., )
a California corporation; and )
WAL-MART STORES, INC., )
a Delaware corporation, )
)
Defendants. )

DOCKETED
JUL 1 6 2004

## MEMORANDUM OPINION AND ORDER

The Plaintiffs, Aero Products International, Inc. ("Aero") and Robert B. Chaffee, filed suit against the Defendants, Intex Recreation Corporation ("Intex"); Quality Trading, Inc.; and Wal-Mart Stores, Inc. A trial by jury was held, where Defendants were found liable for willfully infringing Plaintiffs' patent, United States Patent No. 5,367,726 ("the '726 patent"). The jury awarded Plaintiffs $2,950,000.00 in damages for Defendants' patent infringement. Presently before the Court is Plaintiffs' Motion for Enhanced Patent Damages and Attorney's Fees.

### LEGAL STANDARD

Section 284 of Title 35 of the United States Code provides that "[t]he court may increase the damages up to three times the amount found or assessed." Section 285 of Title 35 states that a court may award attorney's fees to prevailing parties in "exceptional cases."

Determining whether an award of enhanced damages is merited is a two-step process: (1) the jury must determine whether an infringer is guilty of conduct warranting increased damages; and (2) the court determines, in its discretion, whether, and to what extent, to increase the damages award based upon the totality of the circumstances. *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996) (*Jurgens*).

A finding of willful infringement satisfies the first step; and "[u]pon a finding of willful infringement, a trial court should provide reasons for not increasing a damages award or not finding a case exceptional for the purpose of awarding attorneys [sic] fees." *Jurgens*, 80 F.3d at 1570, 1572. However, a finding of willful infringement does not require that enhanced damages be awarded. *Jurgens*, 80 F.3d at 1573.

In analyzing the second requirement, a court must consider all the facts and circumstances, including those that make a "defendant's conduct more culpable, as well as factors that are mitigating or ameliorating." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992) (*Read Corp.*), *abrogated on other grounds*, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). These factors include: (1) whether the infringer deliberately copied the idea or design of the patentee; (2) whether the infringer, when he knew of the patent, investigated the scope of the patent and formed a good-faith belief that the accused device was non-infringing; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) the infringer's remedial actions; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *Read Corp.*, 970 F.2d at 827.

Similarly, determining whether attorney's fees are warranted is also a two-step process: (1) it must first be determined whether the case is exceptional and (2) whether an award of attorney's fees is warranted. *Interspiro USA, Inc. v. Figgie, Int'l, Inc.*, 18 F.3d 927, 933-34 (Fed. Cir. 1994). A "district court must normally explain why a case is not exceptional when a factual finding of willful infringement has been established and, if exceptional, why it decides not to award attorney fees." *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1379 (Fed. Cir. 2002) (*Transclean Corp.*).

The factors used to determine whether attorney's fees should be awarded are similar to the factors used in determining whether enhanced damages should be awarded. *See Transclean Corp.*, 290 F.3d at 1379; *Jurgens*, 80 F.3d at 1573 n.4. However, the conduct used that supports an award under one statute does not necessarily mandate an award under the other statute. *Jurgens*, 80 F.3d at 1573 n.4.

## ANALYSIS

Plaintiffs, the prevailing parties, seek enhanced damages under 35 U.S.C. § 284 and attorney's fees under 35 U.S.C. § 285. Because the jury has found Defendants' infringement was willful, Plaintiffs have satisfied the first requirement for an award under each statute.

The first factor, whether Intex deliberately copied the patent, weighs heavily in favor of Plaintiffs. As evidenced by Intex's e-mails, Intex employees obtained an Aero mattress and sent it to China; Intex marketed the similar mattress less than a year later. Dr. Albert Karvelis testified that Intex's valve was a copy of Plaintiffs' valve, and the valves themselves appear substantially the same in all material respects.

The second factor, whether Intex, when it knew of the patent, investigated the scope of the patent and formed a good-faith belief that the accused device was non-infringing, does not weigh in favor of Intex. Intex learned of the '726 patent in April 2002, when Plaintiffs filed suit, and thereafter hired an attorney to render an opinion regarding any possible infringement by Intex. This opinion contains a detailed analysis of the '726 patent, its prosecution history, and the accused product. The opinion also contains a number of defenses that Intex could assert to defend itself. However, the attorney did not independently investigate the two devices.

Thus, while an independent attorney may have rendered an opinion, the attorney's basis for knowledge here was not independent; and the opinion letter was not, therefore, reliable. Moreover, the opinion does not rely upon independent technical experts to determine the meaning of key terms. Instead, the opinion relied on Richard Saputo, Intex's Product Quality Manager, to provide information regarding the patented product and the Intex products. For instance, the opinion assumed that the Intex product did not contain a hermetic seal, but Saputo failed to perform any test to confirm this fact.

The third factor, Intex's behavior as a party to the litigation, clearly favors the Plaintiffs. First, Intex destroyed e-mails for the first ten months of this litigation every thirty days. While Intex argues that it retrieved e-mails from before the filing of Plaintiffs' Complaint once it realized e-mails were being deleted pursuant to an established company policy, Plaintiffs were still forced to spend time to uncover the e-mails, spend money to help recover the documents, and incur prejudice from not obtaining e-mails that could not be recovered.

Secondly, Intex's behavior at trial also prejudiced Plaintiffs. Intex, at the pre-trial conference, stated that it expected the trial to last twelve to fifteen days; and that Intex intended

4

to raise a number of defenses, including an invalidity defense. During opening statements, Intex also stated that it would present an invalidity defense. However, at trial, Intex abruptly dropped these defenses during what was effectively the third full day of testimony. Plaintiffs were not aware of this change until the examination of Dr. Martin Siegel, Intex's expert witness, was ended without addressing validity. Although Intex is entitled to make tactical decisions during the course of a trial, Intex failed to make any attempt to notify Plaintiffs or the Court that they had made this decision, thus forcing Plaintiffs to unnecessarily expend maximum effort preparing its case on the issues in reliance on Intex's initial representations.

The fourth factor, Intex's size and financial condition, weighs in favor of Plaintiffs. According to Intex's 2001 and 2002 financial reports, Intex sold over $200,000,000.00 worth of goods each year and earned a gross profit of approximately $20,000,000.00 per year. Intex is effectively owned by Tien Zee. Zee also runs other Intex entities. These entities typically work together, have over 10,000 employees, and sell the same product lines.

The fifth factor, the closeness of the case, also weighs in favor of Plaintiffs. "A case is close if it was 'hard-fought' or the jury could have found for the defendant on the issues of infringement, validity, and willfulness." *NTP, Inc. v. Research in Motion, Ltd.*, 270 F. Supp. 2d 751, (E.D. Va. 2003) (citing *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1314 (Fed. Cir. 2002). In this case, the jury could not have found for Intex on the issue of validity because Intex elected not to present evidence of these defenses to the jury.

As to the issues of infringement and willfulness, a substantial amount of the evidence presented by Plaintiffs showed that Intex not only infringed the '726 patent, but it willfully infringed the patent. As discussed above, Intex's e-mails, Dr. Karvelis's testimony, and the

5

direct comparison of the valves was highly persuasive evidence of deliberate copying. Conversely, Dr. Siegel's contrary testimony presented by Intex was not as convincing as Plaintiffs' evidence. Thus, it would have been highly unlikely for the jury to find for Intex on these issues. Moreover, this case could not be described as hard-fought; as discussed earlier, Intex elected to cut short its case-in-chief and presented little in the way of a defense.

The duration of Intex's conduct, the sixth factor, weighs in favor of the Plaintiffs. Intex claims that enhancement damages should be limited to the period after April 12, 2002, when Plaintiffs filed this action, because there is no evidence showing Intex knew of the '726 patent earlier. However, the evidence showed as early as June 6, 2001, Intex sought to acquire one of Aero's mattresses for examination. An Aero employee also testified that Intex was "knock[ing] off" Aero's mattress sometime around 2000. Furthermore, Intex admits, in footnote 11 of its response, that it introduced the accused products in January 2000. Even after Plaintiffs filed suit, Intex continued selling their infringing products. Thus, Intex has infringed Plaintiffs' rights for at least three years and has probably infringed Plaintiffs' rights for over four years.

The seventh factor, the remedial action taken by Intex, weighs in favor of Plaintiffs, as well. Intex failed to present any evidence demonstrating that it took steps to correct their infringing activities. In fact, Intex continued selling its products even after Plaintiffs filed suit. Intex, in its response, does not argue to the contrary.

The eighth factor, Intex's motivation for harm, favors neither party. Intex internally circulated e-mails stating they wanted to "Knock Out Aero," "battle Aero," and "Beat Aero." Also, Intex sought to sell their mattresses at a substantially lower price than Aero's mattresses and that Intex was focused on directly comparing its mattresses to Aero's mattresses. However,

6

these e-mails were intended only to motivate staff to obtain market share against multiple competitors' manufacturing similar products.

The final factor, Intex's concealment of its misconduct, supports Plaintiffs' claim. Intex employees and Tien Zee gave inconsistent answers regarding the research and development done by Intex. Moreover, as discussed earlier, Intex destroyed e-mails for ten months at the beginning of the case.

Intex also contends other circumstances exist which prohibit or mitigate against the imposition of enhanced damages.

First, Intex argues that it was under no duty to investigate whether the '726 patent existed and that it did not realize the '726 patent existed until the suit was filed in April 2002. Furthermore, Intex claims it could not have discovered whether the relevant Aero products were patented because the products themselves were not marked.

However, Intex could have reasonably discovered Plaintiffs' patents as early as June 6, 2001, when it acquired one of Aero's mattresses. According to a January 21, 2002 e-mail, Intex also learned some customers inquired of Intex if it was infringing on Aero's patent rights. Intex further filed a declaratory action against Aero concerning another patent, U.S. Patent No. 4,977,633, in December 2000. It is highly probable that the file history for this patent would have revealed the existence of the '726 patent. Additionally, Aero marked the packaging of patented products, the accompanying instruction materials, and sell sheets for products since as early as 1999. Accordingly, these purported defenses do not mitigate the imposition of enhanced damages.

7

Secondly, Intex claims granting Plaintiffs enhanced damages would constitute an unjust enrichment because the reasonable royalty damage award of $2,950,000.00 granted by the jury already exceeds the gross profit of the accused sales that Intex has recovered, $2,200,000. However, reasonable royalty damages are not based on an infringer's profits but, rather, on the amount the patentee would have made if they licensed the patent to another party at the time the infringement began. *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed. Cir. 1986) (citation omitted). Therefore, this claim does not mitigate against the imposition of enhanced damages.

Based on the foregoing, Plaintiffs are entitled to double patent damages, for a total of $5,900,000.00. Most of the relevant factors – Intex's copying; its litigation conduct, size and financial condition; the lack of closeness of the case; the duration of Intex's conduct; Intex's failure to take remedial actions; and Intex's attempted concealment of its conduct – support the award of these additional damages. However, considering all of the relevant factors vis-a-vis the totality of Intex's conduct, an award of the maximum amount of treble damages permitted under 35 U.S.C. § 284 is not appropriate.

Plaintiffs are also entitled to attorney's fees under 35 U.S.C. § 285. Specifically, as discussed above, Intex's copying, litigation conduct, lack of remedial actions, the lack of closeness of this case, and concealment, mandate an award of attorney's fees. The parties are directed, pursuant to Local Rule 54.3, to submit petitions for the proper amount of attorney's fees.

## CONCLUSION

For the foregoing reasons, Plaintiffs are entitled to double patent damages, for a total of $5,900,000.00, and attorney's fees.

Dated: 7-15-04

JOHN W. DARRAH
United States District Judge