## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2590 | **DATE** | 9/15/2004 |
| **CASE TITLE** | Aero Products Intl. Vs. Intex Recreation Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the use of the phrase "merely colorably different" is properly included in the injunction. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | SEP 16 2004 | 228 |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | JXM docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| MF | courtroom deputy's initials | 2004 SEP 15 PM 3:17 | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AERO PRODUCTS INTERNATIONAL, INC., a Florida corporation; and ROBERT B. CHAFFEE, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> INTEX RECREATION CORPORATION, a California corporation; QUALITY TRADING, INC., a California corporation; and WAL-MART STORES, INC., a Delaware corporation, <br><br> Defendants. | No: 02 C 2590 <br><br> Judge John W. Darrah <br><br> DOCKETED <br><br> SEP 11 6 2004 |

## MEMORANDUM OPINION AND ORDER

The Plaintiffs, Aero Products International, Inc. ("Aero") and Robert B. Chaffee, filed suit against the Defendants, Intex Recreation Corporation ("Intex"); Quality Trading, Inc.; and Wal-Mart Stores, Inc. Plaintiffs alleged Defendants infringed U.S. Patent Nos. 5,367,726 ("the '726 patent") and 4,977,633 ("the '633 patent"). At trial, a jury found in favor of Plaintiffs and against Defendants. Presently before the Court are two motions: (1) Plaintiffs' Motion for an Accounting and Prejudgment Interest; and (2) Plaintiffs' Motion for Entry of a Permanent Injunction.

228

## ANALYSIS

With regard to Plaintiffs' Motion for an Accounting and Prejudgment Interest, Intex does not dispute that Plaintiffs are entitled to: (1) damages calculated by an accounting of infringing sales made from January 1, 2004, through the entry of an injunction; and (2) to an award of prejudgment interest that is compounded at an annual rate. However, the parties dispute: (1) whether Plaintiffs can obtain an accounting for sales of infringing Intex products, while also seeking to enjoin resales of those products; (2) what products are subject to an accounting; and (3) what interest rate should be used in determining the prejudgment interest.

The first issue, whether Plaintiffs can obtain an accounting for sales of infringing Intex products, while also seeking to enjoin resales of those products, relates to both motions presented by Plaintiffs. Plaintiffs concede that the injunction cannot "preclude the resale of infringing products for which Intex has already paid damages" and suggest this statement can be added to the injunction. (Pls.' Reply for an Accounting, at 1). However, Plaintiffs' proposed language could also be interpreted as enjoining the resale of infringing products which are also subject to the accounting, as Intex has not "already paid damages" for these products. Thus, Plaintiffs could still obtain a double recovery of damages, through an accounting, and an injunction of the products subject to the accounting. *See Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1549 (Fed. Cir. 1987). Accordingly, any injunction entered will not preclude the resale of infringing products for which Intex has already paid damages, as well as infringing products which are disclosed in an accounting to determine additional damages.

Next, the parties dispute what products are subject to an accounting. Intex, in a footnote, claims that the design of the products at issue changed beginning in January, 2004; thus, these

2

newly-designed products are not subject to an accounting. Plaintiffs, though, argue that all products which include the infringing component are subject to the accounting, regardless of whether or not a product used a new design. However, it is not proper to determine in the instant motion whether Intex is liable for damages relating to sales of newly-designed products made from January 1, 2004, through the entry of an injunction. Therefore, Intex should provide an accounting of all products using the infringing component; when Intex provides the accounting, it should specifically distinguish between sales of products using the older design and sales of products using the new design.

The parties also dispute what interest rate should be used in the accounting. Plaintiff seeks to use its Weighted Average Cost of Capital ("WACC"), or, in the alternative, the prime interest rate. Intex seeks to use the five-year United States Treasury Bill rate or, at the very least, the prime rate. Plaintiffs' WACC is 13.00 %; the prime rate varies between 9.50 % and 4.12 % during the relevant time period; and the Treasury Bill rate varies between 5.55 % and 2.97 % during the relevant time period. Both parties agree that regardless of the rate chosen, that rate should be compounded annually.

Prejudgment interest is generally used to adequately compensate a plaintiff for the lost use of its royalties. *See* 35 U.S.C. § 284; *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997). Plaintiffs' WACC represents the cost of obtaining both debt and equity financing for projects it undertook in the absence of compensation from Intex. Plaintiffs thus contend this rate should be used because, absent the infringement, Plaintiffs would have been able to use the money it received as a royalty to finance projects instead of obtaining financing.

3

However, as Intex argues, Plaintiffs' WACC includes a return that compensates Plaintiffs for a risk Plaintiffs beared. Plaintiffs, though, did not undertake a risk in this regard. Plaintiffs will be compensated for the loss of its money through damages, and the interest rate will further compensate Plaintiffs for the time value of those damages. Accordingly, using Plaintiffs' WACC as the prejudgment interest rate is not appropriate.

Intex asserts that the five-year Treasury Bill rate is the appropriate rate. Intex cites a number of cases in support of using this rate, but those cases are all distinguishable. Moreover, the Treasury Bill rate has been criticized as being "too low, because there is no default risk with Treasury bills." *Gorenstein Enters., Inc. v. Quality Care-USA*, 874 F.2d 431, 437 (7th Cir. 1989). As Plaintiffs note, they did not make a risk-free loan to Intex; but, rather, Plaintiffs had to engage in litigation to recover damages. Therefore, the Treasury Bill rate would not adequately compensate Plaintiffs.

The remaining proposed rate, the prime interest rate, is acceptable to both parties as an alternative rate to calculate prejudgment interest. Using this rate, compounded annually, Plaintiffs are entitled to $381,786.00 in prejudgment interest through July 31, 2004, and $504.39 until the entry of a final judgment.

With regard to Plaintiffs' Motion for Entry of a Permanent Injunction, Intex does not dispute that the entry of an injunction is proper. However, Intex disputes whether: (1) a party that was not involved in this action may be enjoined; (2) product numbers should be used to identify which products are subject to the injunction; and (3) the phrase "merely colorably different" is properly included in the injunction.

4

As to the first issue, whether a party that was not involved in this action may be enjoined, Intex argues the proposed injunction is overly broad because it enjoins persons, firms, and corporations in privity with Intex, Wal-Mart, and Quality Trading. According to Intex, this language could mean that customers would also be enjoined. Plaintiffs argue that the language at issue closely tracks Federal Rule of Civil Procedure 65(d) and is thus proper.

Federal Rule of Civil Procedure 65(d) provides, in relevant part, that "those persons in active concert or participation with [those enjoined] who receive actual notice of the [injunction] order by personal service or otherwise" may be enjoined from taking certain actions. Plaintiffs proposed language states that "all persons, firms, and corporations in active concert, participation, or in privity with Intex Recreation Corp., Quality Trading, Inc., or Wal-Mart Stores, Inc." are enjoined from taking certain actions. Plaintiffs' proposed language does not impermissibly broaden the scope of the injunction to non-parties as long as those persons, firms, and corporations receive actual notice of the injunction by personal service or otherwise. Therefore, Plaintiffs' proposed language indicating actual notice must be provided is within the requirements of Rule 65(d).

The parties further dispute whether product numbers which were admitted during trial should be used to identify which products are subject to the injunction. Intex claims that they have redesigned products to prevent infringement of Plaintiffs' patents, but they retained old product number designations because those numbers relate to a particular style instead of the product's configuration. Thus, according to Intex, the injunction would effect non-infringing products carrying the same product number.

5

However, Plaintiffs correctly argue that using product numbers would enable efficient policing of the marketplace to ensure Intex complies with the injunction. Moreover, the parties used product numbers throughout the litigation to identify the infringing products. Intex, with full knowledge of these facts, did not change the product numbers when it purportedly redesigned the infringing product to prevent this situation. Accordingly, product numbers are appropriate to identify the products subject to the injunction and will be included in the injunction order. It is noted that the injunction order will also identify the product subject to the injunction by patent and claim number.

Finally, the parties dispute whether the phrase "merely colorably different" is properly included in the injunction. Intex argues that this phrase is overly vague and could include designs not adjudicated by the Court. Intex also asserts that the phrase will ensure Plaintiffs may use summary contempt proceedings to enforce the injunction, without any findings of whether substantial infringement issues exist. However, these concerns are more properly raised during enforcement proceedings regarding the injunction. Therefore, the use of the phrase "merely colorably different" is properly included in the injunction.

Dated: September 15, 2004

JOHN W. DARRAH
United States District Judge

6