UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AERO PRODUCTS INTERNATIONAL, INC., a Florida corporation, and ROBERT B. CHAFFEE, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> INTEX RECREATION CORPORATION, a California corporation; QUALITY TRADING, INC., a California corporation; and WAL-MART STORES, INC., a Delaware corporation, <br><br> Defendants. | No: 02 C 2590 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

The Plaintiffs, Aero Products International, Inc. ("Aero") and Robert B. Chaffee, filed suit against the Defendants, Intex Recreation Corporation ("Intex"); Quality Trading, Inc.; and Wal-Mart Stores, Inc. A trial by jury was held, and Defendants were found liable for willfully infringing Plaintiffs' patent, United States Patent No. 5,367,726 ("the '726 patent"), which involves a valve used in an inflatable air mattress, and for violating Plaintiffs' trademark. Presently before the Court is Intex's Motion for a Judgment as a Matter of Law and for a New Trial.

## ANALYSIS

Intex raises a number of issues, including decisions concerning: (1) the sufficiency of the evidence used to determine whether Intex infringed the '726 patent; (2) evidentiary rulings made by the Court; (3) jury instructions; and (4) the claim construction and indefiniteness rulings. The Federal Circuit adopts Seventh Circuit law in determining the proper procedural standards. *See Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1358 (Fed. Cir. 2001).

*Infringement Evidence*

Intex seeks judgment as a matter of law that the '726 patent was not infringed by Intex's accused device as to both literal infringement and infringement under the doctrine of equivalents.

In determining whether to grant a motion for a judgment as a matter of law under Federal Rule of Civil Procedure 50(b), the inquiry is limited to "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict viewed in the light most favorable to the party against whom the motion is directed." *Susan Wakeen Doll Co. v. Ashton-Drake Galleries*, 272 F.3d 441, 449 (7th Cir. 2001) (*Susan Wakeen*). Thus, the jury's decision is revered only if it is found "that no rational juror could have found for the prevailing party." *Susan Wakeen*, 272 F.3d at 449.

Claim 12 of the '726 patent includes a limitation requiring "stiffening means for reducing flexing of the diaphragm except in the outer annular region." In order to literally infringe a means-plus-function limitation, "the accused device must perform the identical function recited in the means limitation." *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1578 (Fed Cir. 1993).

2

Intex contends that Plaintiffs failed to present any evidence that the accused device had a structure that performed the stiffening function and that Plaintiffs only presented evidence that the accused device supported the diaphragm but did not demonstrate that the accused device reduced flexing. However, Dr. Karvelis, Plaintiffs' expert, testified that all the limitations in claim 12 were literally infringed. Moreover, Dr. Karvelis also stated that the accused device had a means which supported the diaphragm. Intex, in its reply, offers nothing to the contrary. Based on this evidence, viewed in the light most favorable to Plaintiffs, a rational juror could have found claim 12 was literally infringed by Intex's accused device.

Intex next argues that the accused device did not infringe the '726 patent under the doctrine of equivalents. However, the jury never made a finding in this regard but found that the '726 patent was literally infringed. Accordingly, it is not necessary to determine Intex's motion for judgment as a matter of law on that issue.

*Evidentiary Rulings*

Intex next contends a new trial is needed because of a number of incorrect evidentiary rulings were made. According to Intex, the Court erred in: (1) excluding evidence regarding non-infringement which Intex attempted to produce; (2) excluding testimony from Rod Berman, the author of a counsel letter concerning non-infringement of the '726 patent by Intex's accused device; (3) excluding testimony from Bill Smith, Intex's Vice President of Corporate Administration, concerning the opinion letter; and (4) admitting into evidence cut-away Aero and Intex valves. "[I]f an error in the admission or exclusion of evidence was committed during the

trial, the court will grant a new trial only if the error had a 'substantial influence over the jury' and the result reached was 'inconsistent with substantial justice.'" *Agushi v. Duerr*, 196 F.3d 754, 759 (7th Cir. 1999) (quoting *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997)).

As to the exclusion of non-infringement evidence issue, Intex argues that on a number of occasions, the Court prevented Intex from conducting legitimate inquiries as to the presence or absence of the claim terms of the '726 patent. Intex cites to a number of instances where it asserts that the Court prevented inquiry as to whether a particular claimed limitation was present in the accused device. However, Intex was not prevented from inquiring whether the accused device actually infringed the '726 patent; but, rather, Intex was prevented from re-examining the claim construction ruling. Therefore, it cannot be said that the evidentiary rulings on this issue had a substantial influence over the jury and that the result reached was inconsistent with substantial justice.

Intex also argues it was an error to exclude evidence from Rod Berman concerning an opinion-of-counsel letter he prepared in determining whether Intex's accused products infringed the '726 patent. Intex specifically contends that the Court excluded evidence from Berman: (1) concerning the contents of his letter; (2) his underlying knowledge, experience, and qualifications in the field of patent law; and (3) the process and thoroughness by which Berman prepared the opinion letter, including detailed billing statements and other documents communicated to Intex showing Berman's work on the matter.

However, the entire opinion letter prepared by Berman was admitted into evidence, and Intex has failed to identify any evidentiary rulings made that prevented Berman from discussing the contents of his letter. In fact, Berman was expressly permitted to testify regarding his opinion letter. (Tr. at 601).

Intex further argues that the Court erred in excluding evidence from Bill Smith regarding the contents of Berman's opinion letter. However, as discussed above, the letter was admitted into evidence, and Berman was permitted to testify about the conclusions in the letter. Thus, it cannot be said this ruling had a substantial influence over the jury such that the result reached was inconsistent with substantial justice.

Finally, Intex argues that it was an error to admit Trial Exhibits 270 and 271 into evidence. These exhibits are cut-away valves of the claimed invention and the accused device. Intex contends these exhibits had large portions cut out and were no longer accurate representations. Specifically, Intex contends that a cam mechanism was removed and completely ignored in these exhibits. However, another exhibit created by Intex contained the cam mechanism and was also admitted into evidence. In its reply, Intex offers nothing to the contrary. Accordingly, even if the admission of Trial Exhibits 270 and 271 was in error, these rulings did not have a substantial influence over the jury such that the result reached was inconsistent with substantial justice.

*Jury Instructions*

Intex also seeks a new trial based upon two jury instructions that were given, jury instruction 13 and jury instruction 34. Jury instructions are to be examined as a whole to determine whether the jury was informed of the applicable law. *Hefferman v. Bd. of Trs. of*

5

*Illinois Cmty. Coll. Dist. 508*, 310 F.3d 522, 528 (7th Cir. 2002) (citation omitted) (*Hefferman*).

The instructions must be correct statements of the law and supported by evidence. *Hefferman*, 310 F.3d at 528 (citation omitted). A jury instruction must be misleading and cause prejudice to a party to mandate a new trial. *Hefferman*, 310 F.3d at 528 (citation omitted).

> Jury instruction 13 stated:
>
> When a party has notice that evidence and or documents within its custody and control are relevant to pending litigation, that party has a legal duty to preserve the relevant evidence, and must take reasonable steps to prevent the destruction or loss of that evidence.
>
> During the first year of this litigation, from April 2002 to February 2003, Intex destroyed all of its email every thirty days. In doing so, Intex failed to preserve documents and evidence that it had a legal duty to preserve.
>
> You are permitted, but not required to, infer that the evidence Intex failed to preserve between April 2002 and February 2003 would have been unfavorable to Intex and consequently deprived Aero of documents material to its case. In deciding whether to draw this inference you should consider whether the evidence that Intex failed to preserve would have duplicated any other evidence already before you.

Intex argues this instruction was prejudicial because it improperly suggested that Intex began destroying documents and e-mails at the beginning of litigation. Rather, Intex claims that it had a document retention policy regarding e-mails that was mistakenly not stopped once litigation began. Intex further argues that it hired an outside consulting firm to help it recover the lost e-mails.

However, it cannot be said that jury instruction 13 was misleading or caused Intex any prejudice. The instruction does not give any indication as to why the e-mails were destroyed. In fact, the instruction itself states e-mail was destroyed every thirty days, which would be consistent with a corporate policy. Furthermore, Intex was permitted to present evidence

6

concerning its e-mail retention policy. Finally, another jury instruction stated that nothing in the jury instructions indicates any opinion from the Court as to the facts in this case.

Jury instruction 34 states, in relevant part:

> Intex and Quality Trading contend that they did not infringe Aero's trademark ONE TOUCH because the alleged infringement constituted a fair use of the trademark to describe Intex's products. Intex and Quality Trading have the burden of proving their fair use of the mark by clear and convincing evidence.

Intex claims that this instruction was prejudicial because it required Intex to prove the fair use defense by clear and convincing evidence, instead of the typical preponderance of the evidence standard for affirmative defenses. In formulating this standard, the Court relied on the Ninth Circuit model jury instruction for the fair use defense. The parties agreed that this was the only source that addressed the burden of proof on the fair use defense. In the absence of contrary authority, this instruction was given. Intex, in the instant motion, has once again failed to present any contrary authority on the burden of proof regarding the fair use defense. As such, it cannot be said jury instruction 34 was misleading or prejudicial to Intex.

## Claim Construction and Indefiniteness Rulings

Lastly, Intex contends that the Court's rulings concerning the claim construction[1] and indefiniteness[2] were in error. In this respect, Intex seeks reconsideration of past rulings that are not appropriately considered in a motion for a judgment as a matter of law or for a new trial.

---

[1] *Aero Prods. Int'l v. Intex Recreation Corp.*, No. 02 C 2590, 2004 WL 407028 (N.D. Ill. Jan. 28, 2004).

[2] *Aero Prods. Int'l v. Intex Recreation Corp.*, No. 02 C 2590, 2004 WL 1557736 (N.D. Ill. July 9, 2004).

7

In this case, Intex's arguments were considered and ruled upon in the prior opinions. Intex has not shown that the Court has patently misunderstood its argument or made an error of apprehension. Accordingly, reconsideration of these rulings would not be appropriate.

## **CONCLUSION**

For the foregoing reasons, Intex's Motion for a Judgment as a Matter of Law and for a New Trial is denied.

Dated: February 11, 2005

JOHN W. DARRAH
United States District Judge