UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AERO PRODUCTS INTERNATIONAL, INC., a Florida corporation, and ROBERT B. CHAFFEE, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> INTEX RECREATION CORPORATION, a California corporation; QUALITY TRADING, INC., a California corporation; and WAL-MART STORES, INC., a Delaware corporation, <br><br> Defendants. | No: 02 C 2590 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

The Plaintiffs, Aero Products International, Inc. ("Aero") and Robert B. Chaffee, filed suit against the Defendants, Intex Recreation Corporation ("Intex"); Quality Trading, Inc.; and Wal-Mart Stores, Inc. Presently before the Court is Plaintiffs' Motion to Enter Supplemental Damages Calculation.

*History*

On February 25, 2004, a jury found Intex liable for Plaintiffs' patent, United States Patent No. 5,367,726 ("the '726 patent"). In a general verdict, the jury awarded $2,950,000.00 in damages for the patent infringement. The jury also found that Intex's infringement was willful.

After the infringement and willfulness verdicts, Intex was ordered to pay double the patent damages awarded by the jury, pursuant to 35 U.S.C. § 284. *Aero Prods. Int'l v. Intex Recreation Corp.*, No. 02 C 2590, 2004 WL 1696749 (N.D. Ill. July 15, 2004)

On September 15, 2004, Intex was enjoined from: (1) manufacturing new mattresses which incorporate a valve that infringes the '726 patent and (2) selling products bearing product numbers prohibited by the injunction. *Aero Prods. Int'l v. Intex Recreation Corp.*, No. 02 C 2590, 2004 WL 2091996 (N.D. Ill. Sept. 16, 2004); *Aero Prods. Int'l v. Intex Recreation Corp.*, No. 02 C 2590, 2004 WL 2255984 (N.D. Ill. Sept. 16, 2004). Thereafter, Plaintiffs filed a motion for contempt, contending that Intex violated the injunction by: (1) selling products with product numbers prohibited by the injunction; and (2) selling another product that infringes the '726 patent, the "G1" mattress, which was not part of the jury trial.

On December 15, 2004, Intex was ordered to immediately cease and desist selling products bearing prohibited product numbers; and a hearing was set to determine whether Intex violated the injunction. *Aero Prods. Int'l v. Intex Recreation Corp.*, No. 02 C 2590, 2004 WL 2958688 (N.D. Ill. Dec. 16, 2004). On May 11, 2005, Intex was found in contempt for selling products bearing the product numbers prohibited by the injunction and for selling the G1 mattress. The contempt order required Intex to account for all products sold in violation of the injunction. Ruling was reserved on the issue of damages for the sale of these products.

*Plaintiffs' Motion to Enter Supplemental Damages Calculation*

Plaintiffs seek royalties and prejudgment interest for: (1) sales of the infringing mattress made between January 1, 2004 through September 15, 2004; and (2) sales of the G1 mattress, which was found to violate the injunction. The proper damage measure for sales of products bearing the prohibited product numbers must also be determined.

## ANALYSIS

Plaintiffs seek both a 13.5 percent royalty rate, double damages, and prejudgment interest on sales of infringing mattresses made between January 1, 2004 through September 15, 2004. Under 35 U.S.C. § 284, "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for use made of the invention by the infringer, together with interest and costs as fixed by the court." "A reasonable royalty calculation envisions and ascertains the results of a hypothetical negotiation between the patentee and the infringer at a time before the infringing activity began." *Integra Lifesciences I, Ltd. v. Merck KgaA*, 331 F.3d 860, 870-71 (Fed. Cir. 2003) (citations omitted). The determination of a reasonable royalty is committed to the discretion of the district court. *Golight, Inc. v. Wal-Mart Stores, Inc.*, 335 F.3d 1327, 1338 (Fed. Cir. 2004).

Intex argues that no evidence exists to support an a 13.5 percent royalty rate sought by Plaintiffs, as the evidence relied upon at trial was only directed to sales occurring before 2004. However, as discussed above, the computation of a reasonable royalty contemplates a negotiation

3

at a "time before the infringement began." *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). Therefore, the evidence adduced at trial is sufficient to support a 13.5 percent reasonable royalty on sales made between January 1, 2004 through September 15, 2004.

It is proper to use the royalty rate determined by the jury to assess damages for the sales at issue in this motion. *Stryker Corp. v. Davol, Inc.*, 75 F. Supp. 2d 746, 747 (W.D. Mich. 1999); *Oscar Mayer Foods Corp. v. Conagra, Inc.*, 869 F. Supp. 656, 668 (W.D. Wis. 1994) (*Oscar Mayer*). Plaintiffs contend that when a jury renders a general verdict, it is appropriate to extrapolate a royalty rate from the general verdict. *Oscar Mayer*, 869 F. Supp. at 668.

Here, the jury awarded Plaintiffs a $2,950,000.00 general verdict on $21,817,103.00 in sales. Dividing $2,950,000.00 by $21,817,103.00 results in 13.5 percent ratio of royalty for the use of the product to total sales. Accordingly, Plaintiffs are awarded a reasonable royalty for the sales of all products bearing the prohibited product numbers at the rate of 13.5 percent. Based on all the relevant evidence, the totality of the circumstances, and considering all possible alternative sanctions, the Court finds that a 13.5 percent royalty is reasonable amount based on the reasonable probable harm to Plaintiffs.

Plaintiffs were awarded double the patent damages assessed by the jury by the Court on the jury's finding of willfulness. *Aero Prods. Int'l v. Intex Recreation Corp.*, No. 02 C 2590, 2004 WL 1696749 (N.D. Ill. July 15, 2004). Intex does not dispute that Plaintiffs should receive double damages for the sales made between January 1, 2004 and September 15, 2004. Intex also does not dispute that Plaintiffs should receive prejudgment interest for these sales. Finally, Intex does not dispute the calculations made by Plaintiffs regarding the royalty rate. Accordingly,

Plaintiffs are awarded $469,018.00 as a reasonable royalty, enhanced damages of $469,018.00, and prejudgment interest of $6,733.00 for the sales of infringing mattresses made between January 1, 2004 and September 15, 2004.

The remaining damage issues arising out of the contempt order concern: (1) the proper damage measure for sales made between September 15, 2004 and December 15, 2004, of mattresses bearing product numbers prohibited by the injunction; and (2) royalties and prejudgment interest on sales of the G1 mattress. Plaintiffs also seek to double the damages for the sales of the G1 mattress.

Intex argues that no evidence exists concerning the proper damage amount to assess for sales of mattresses found to be in violation of the injunction: (1) the G1 mattress and (2) sales made between September 15, 2004 and December 15, 2004, of products bearing prohibited product numbers. According to Intex, Plaintiffs' damages experts only testified regarding products sold between 2000 and 2003 but did not examine sales made after 2003, including the G1 mattress that incorporated a new design.

However, the damages from sales at issue all arise out of the violations of the contempt order, and "[a] court has broad discretion to fashion a remedy based upon the nature of the harm and probable effect of alternative sanctions." *Connolly v. J.T. Ventures*, 851 F.2d 930, 933 (7th Cir. 1988). Assessing the royalty rate determined by the jury and found to be reasonable by the Court strikes a fair balance between the harm suffered by Plaintiffs and the probable effect of alternative sanctions. Assessing a lower royalty would not deter Intex from again violating the injunction, while assessing a higher royalty rate would overcompensate Plaintiffs for the harm

they suffered. Accordingly, a 13.5 percent royalty will be assessed against all sales made between September 15, 2004 and December 15, 2004, of mattresses bearing product numbers prohibited by the injunction and on sales of the G1 mattress.

Plaintiffs are awarded a reasonable royalty for these sales of all products bearing the prohibited product numbers at the rate of 13.5 percent. The jury had determined this to be a reasonable amount; based on all the relevant evidence, the totality of the circumstances, and considering all possible alternative sanctions, the Court finds that is a reasonable amount based on the probable harm to Plaintiffs.

Intex further contends that no evidence exists concerning that it willfully infringed the '726 patent and that, therefore, the standard required to enhance patent damages has not been met. 35 U.S.C. § 285; *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570-73 (Fed. Cir. 1996) (*Jurgens*). However, doubling the damages for sales of the G1 mattress is also appropriate and properly balances the harm suffered by Plaintiffs and the need for an effective deterrent against the probable effect of alternative sanctions. While Intex contends that the G1 mattress does not infringe the '726 patent, Plaintiffs presented clear and convincing evidence to the contrary. Permitting Intex to market largely unchanged products which infringe Plaintiffs' patent rights and violate the injunction are serious harms. Intex has twice violated Plaintiffs' patent rights and the injunction, and a lesser sanction would not deter Intex from further violations.

Similarly, doubling the damages for sales of mattresses bearing the product numbers prohibited by the injunction is also appropriate. As detailed in the order finding Intex in contempt of the injunction, Intex's contrary statements in defense of its conduct violating the

injunction in this regard was disingenuous and evidenced a knowing and willful violation of the order and the patent rights of Plaintiffs. Assessing anything less than double damages would be an insufficient deterrent to such future conduct.

Intex does not dispute the calculations provided by Plaintiffs concerning the G1 mattress. Therefore, Plaintiffs are awarded $825,627.00 as a reasonable royalty on Intex's sales. Because Plaintiffs are entitled to enhanced double damages, Plaintiffs are awarded another $825,627.00. Plaintiffs are further awarded prejudgment interest of $11,853.00.

As to the sales made between September 15, 2004 and December 15, 2004, of mattresses bearing product numbers prohibited by the injunction, Intex has previously been ordered to account for these sales. Intex shall do so forthwith.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Enter a Supplemental Damages Calculation is granted. Plaintiffs are awarded $2,607,876.00 in supplemental damages. Plaintiffs are also awarded a reasonable royalty of 13.5% of all sales made between September 15, 2004 and December 15, 2004 of mattresses bearing product numbers prohibited by the injunction and enhanced double damages of this amount.

Dated: 6-9-05

JOHN W. DARRAH
United States District Judge

7