# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AERO PRODUCTS INTERNATIONAL, INC., a Florida corporation, and ROBERT B. CHAFFEE, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> INTEX RECREATION CORPORATION, a California corporation; QUALITY TRADING, INC., a California corporation; and WAL-MART STORES, INC., a Delaware corporation, <br><br> Defendants. | No: 02 C 2590 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

The Plaintiffs, Aero Products International, Inc. ("Aero") and Robert B. Chaffee, filed suit against the Defendants, Intex Recreation Corporation ("Intex"); Quality Trading, Inc.; and Wal-Mart Stores, Inc. A trial by jury was held; and Defendants were found to have willfully infringed Plaintiffs' patent, United States Patent No. 5,367,726 ("the '726 patent"), for a valve used in an inflatable air mattress and for violating Plaintiffs' trademark. The jury awarded Plaintiffs $2,950,000.00 in patent damages and $1,000,000.00 in trademark damages.

In a written opinion, Plaintiffs were also awarded double patent damages, pursuant to 35 U.S.C. § 284, and attorneys' fees, pursuant to 35 U.S.C. § 285. *Aero Prods. Int'l v. Intex Recreation Corp.*, No. 02 C 2590, 2004 WL 1696749 (N.D. Ill. July 15, 2004). The parties were directed, pursuant to Local Rule 54.3, to submit petitions for attorneys' fees. The parties have

done so, and presently before the Court is the Joint Statement Regarding Attorney's Fees and Expenses. Plaintiffs seek attorneys' fees totaling $2,217,356.93 and expenses totaling $156,617.43. Intex stipulates that Plaintiffs are entitled to $1,668,398.70 in attorneys' fees and does not dispute that Plaintiffs may recover $110,555.18 in expenses.

After conferring, the parties have the following disputes: (1) the appropriate hourly rate for Plaintiffs' attorneys; (2) whether Plaintiffs should be compensated for work relating to its motion to dismiss Intex's Second and Third Counterclaims; (3) whether Plaintiffs should be compensated for time incurred relating to Intex's motion for summary judgment concerning another patent that was not the subject of the jury trial; (4) whether Plaintiffs should be compensated for time spent on third-party discovery of Underwriters Laboratories; (5) whether Plaintiffs should be compensated as to any time incurred after the jury verdict was returned for motions for judgment as a matter of law that were later determined to be moot; (6) whether Plaintiffs appropriately staffed depositions, the pretrial conference, and trial; (7) the appropriateness of certain disbursements Plaintiffs are seeking.

In determining the amount of fees to award pursuant to 35 U.S.C. § 285, "there must be some evidence to support the reasonableness of, *inter alia*, the billing rate charged and the number of hours expended." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983) (*Lam*). Expenses may also be included in awarding fees under § 285. *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983). The decision of the proper amount of fees is within the discretion of the district court. *Lam*, 718 F.3d at 1069.

Plaintiffs seek the following hourly rates for their four principal attorneys on the case, William Frankel, Michael Chu, Mark Remus and David Bluestone: (1) in 2002, $405.00,

$320.00, $250.00, and $215.00, respectively; (2) in 2003, after factoring in a 7.33 percent discount, $403.00, $320.00, $260.00, and $222.00, respectively; and (3) in 2004, $460.00, $370.00, $320.00, and $280.00, respectively. Frankel is a partner who started working in 1980; Chu is an attorney who started working in 1992; Remus is an attorney who started working in 1997; and Bluestone is an attorney who started working in 1999.

Intex argues that the hourly billing rate should be reduced because: (1) the rates charged by Intex are higher than the median billing rates in the American Intellectual Properly Law Association's ("AIPLA") 2002-03 hourly billing survey; (2) those rates are higher than the rates charged by Intex's local counsel; and (3) of additional factors, as enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (*Johnson*).

While the rates charged by Plaintiff's counsel in 2002-03 are higher than the median amount of the AIPLA survey, those rates, except for Frankel, are all within the seventy-fifth percentile of the AIPLA survey for attorneys with similar experience; Frankel's rates only exceed the seventy-fifth percentile amount for partners with similar experience by $7.00 in 2002 and $5.00 in 2003. Further, an independent survey which examined the hourly billing rates of thirty large intellectual property law firms in 2004 disclosed Plaintiffs' attorneys' hourly rates were below the median.

Intex also argues that Plaintiffs' attorneys' rates are higher than the rates charged by Intex's local counsel. However, Plaintiffs' attorneys are permitted to set their own rates and may recover those rates provided that they are reasonable.

Intex further contends that three factors, as enumerated in *Johnson*, 488 F.2d 717-19, compel a reduction of the hourly rates: (1) too much time and labor was expended by Plaintiffs'

3

attorneys; (2) the technology involved was simple and not complex; and (3) the amount of attorney's fees sought by Plaintiffs, $2,217,356.93, represents too high of a percentage – 32 percent – of the actual recovery of $6,900,000.00. However, the calculation of the time and labor expended by Plaintiffs' attorneys is not relevant to the determination of the reasonableness of the hourly rate. While the technology involved may be relatively simple, the patent issues raised by the parties were complex. Intex argues that only 25 percent of the recovery award should be awarded, but Intex raised a number of unnecessary issues into the case. For example, Intex disclosed it would assert the defenses of invalidity at trial but abruptly abandoned this defense during the trial. This type of conduct increased the time required by Plaintiffs' attorneys in trial preparation and, therefore, needlessly increased the attorneys' fees.

The presentation of evidence on complicated issues by Plaintiffs' attorneys was done in a manner that was clear and understandable for the jury. In particular, in this regard, was Plaintiffs' attorneys' conduct of the direct examination of Plaintiffs' expert, Dr. Albert Karvelis. The high level of Plaintiffs' attorneys' trial practice skills was a significant factor in achieving a favorable result for the Plaintiffs.

Intex next argues that Plaintiffs should not be compensated for two specific motions filed by the Plaintiffs' attorneys because they were unnecessary. These two motions involved United States Patent No. 5,267,363 ("the '363 patent"). The '363 patent was not an issue in the jury trial because Intex was granted summary judgment on claims involving this patent. It was Intex who raised the issue of the '363 patent; Plaintiffs' attorneys' conduct in defending these claims was reasonable.

4

Intex also asserts that Plaintiffs should not be entitled to attorneys' fees for third-party discovery subpoenaed by Plaintiffs from Underwriters Laboratories because it was unnecessary, as it sought information regarding the electronics in the mattress pump, and overly broad, as it related to waterbeds and bedroom furniture not involved in the litigation. However, Plaintiffs subpoenaed these documents from Underwriters Laboratories after Intex claimed it did not have any relevant documents in this regard. Although Intex claims these documents were irrelevant, Plaintiffs, in discovery, are entitled to any information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Plaintiffs' attorneys acted reasonably in this regard.

Intex further contends that Plaintiffs unnecessarily briefed a number of motions for judgment as a matter of law, as these motions were rendered moot after the jury entered a verdict in favor of Plaintiffs on February 25, 2004. Intex contests the time Plaintiffs' attorneys spent working on briefs which were all filed after the jury rendered its verdict.

Because the motions were mooted by the jury verdict, Plaintiffs unnecessarily filed these additional briefs after the verdict and may not be awarded fees for their preparation. Moreover, Plaintiffs' time sheets do not disclose the amount of time spent preparing the briefs; and, therefore, it cannot be determined how much time Plaintiffs expended. Therefore, Plaintiffs may not recover their fees for March 2004, valued at $89,645.45. *See Lam*, 718 F.2d at 1068-69. The May 2004 brief, though, was only two pages long. Because of the extremely short nature of this brief and the large deduction of March 2004 fees, a further reduction of fees for the May 2004 brief would be inappropriate.

Intex also argues that Plaintiffs' attorneys excessively staffed the case by: (1) having two attorneys present at each deposition; (2) having all four trial attorneys attend the pretrial conference; and (3) having four attorneys present at the trial. Intex also challenges the hours billed by Attorney Chu.

Recovering fees for having multiple attorneys present at a deposition is permissible under 35 U.S.C. § 285. *Vardon Golf Co. v. Karsten Mfg. Corp.*, No. 99 C 2785, 2003 WL 172006, at *4 (N.D. Ill. Mar. 31, 2003). Having all trial attorneys attend the pretrial conference is also reasonable to insure all trial attorneys understand the Court's trial procedure and the have the opportunity to raise any specific issues with the Court at that time. Having four attorneys present at the trial was also reasonable, based on the number, nature, and complexity of the issues concerning the validity of the patent, whether Intex's device infringed the '726 patent, and damages. Intex had four attorneys present at the trial, as well.

Regarding the participation of Chu, Intex contends that he was only minimally involved at trial yet billed 1,164.5 hours on this matter. Chu was the attorney responsible for preparing for Intex's invalidity defenses. Intex, at the pretrial conference, stated that it expected the trial to last twelve to fifteen days and that Intex intended to raise a number of defenses, including an invalidity defense. During opening statements, Intex also stated that it would present invalidity defenses. However, as mentioned above, at trial, Intex abruptly abandoned these defenses during the first few days of trial. Instead of the twelve days represented by Intex, the trial, including jury deliberations, took six days. Chu's preparation regarding the anticipated invalidity defenses was reasonable based on Intex's pretrial and early trial assertions that these later-abandoned issues were going to be litigated. Accordingly, the hours billed by Chu are reasonable.

Lastly, Intex objects to a number of expenses Plaintiffs seek: (1) $41,021.56 in copying charges; (2) $584.00 in taxi-cab costs; and (3) $4,356.69 for food and meals obtained throughout the case. Plaintiffs have not properly documented the necessity for these copying charges, the number of copies made, or the costs per copy and may not recover these expenses. *See Hensley v. Eckerhart*, 461 U.S. 424, 443 (1983) ("Where documentation is inadequate, the district court may reduce the award accordingly."). Plaintiffs have also failed to explain why the taxi-cab and food expenses are reasonable. Therefore, Plaintiffs' award of expenses will be reduced by $45,962.25.

## CONCLUSION

For the foregoing reasons, Plaintiffs are awarded $2,127,771.48 in attorneys' fees and $110,555.18 in expenses.

Dated: 6-9-05

JOHN W. DARRAH
United States District Judge

7