IN THE UNITED STATES COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Aero Products International, Inc., a Florida corporation, and Robert B. Chaffee, an individual, <br><br>        Plaintiff, <br>vs. <br>Intex Recreation Corp., a California corporation, Quality Trading, Inc., a California corporation, and Wal-Mart Stores Inc., a Delaware corporation, <br><br>        Defendants. | Case No.: 02 C 2590 <br><br><br><br>Judge John W. Darrah <br><br><br><br><br>Magistrate Judge Geraldine Soat Brown |

**MEMORANDUM OF DEFENDANT INTEX RECREATION CORP. REGARDING PROPRIETY OF LETTER OF CREDIT**

At the request of the Court at the hearing on November 3, 2005, defendant Intex Recreation Corp. ("IRC") submits this Memorandum regarding the propriety of the letter of credit issued by HSBC as a security under Local Rule LR65.1(b)(4) pending the conclusion of the appeal herein.

**I.**

**INTRODUCTION**

At the hearing on November 3, 2005, counsel for plaintiff Aero Products International, Inc. ("Aero"), raised with the Court the "propriety" of the letter of credit issued by HSBC and requested that the Court require that any letter of credit obtained with respect to the Amended Judgment before the Court be from a banking institution located in the United States. Aero's "concern," as related at that hearing, was that because the banking institution that issued the letter of credit, Hong Kong and Shanghai Banking Corporation, was not within the Court's

4825-6933-1712.1

1

jurisdiction, there "could" be problems if payment was sought at the conclusion of the appeal. Aero's counsel had voiced this concern to IRC's counsel before the hearing, but neither at that time, nor at the hearing itself, did they identify specific problems arising from the fact that the letter of credit was issued from a bank in Hong Kong, or with the bank itself, or provide IRC with the opinion of banking counsel or a representative of a financial institution to justify the requested restriction. Aero has never expressed any concerns regarding the terms of the letter of credit that had been posted nor was it able to articulate any issues with respect to the bank itself, other than its location.

Contrary to Aero's characterization, the location of the financial institution will not affect the ability to collect on the letter of credit at the conclusion of the appeal. That obligation is governed by international banking regulations and obligations, as articulated by the International Chamber of Commerce. A banking institution would be unable to engage in banking transactions in the U.S. if it simply reneged on its obligations as seems to be Aero's contention.

Furthermore, the banking institution that has issued the letter of credit, HSBC, is internationally known and respected. It is the third largest bank globally and members of the HSBC "Group" have offices throughout the world, including in the United States. This is not an institution that is unknown in the U.S. or Canada and obviously the various HSBC entities do business in the U.S. and throughout North America.

Additionally, uniform regulations for letters of credit are distributed by the International Chamber of Commerce and are adhered to by financial institutions throughout the world. These regulations govern the use and application for letters of credit and are adhered to so that there is consistency of use and application on a global basis. Although possibly a hackneyed term, the existence of a "global economy" mandates that rules for the conduct of trade and payments be

followed to insure the orderly flow of commerce. The utilization of foreign banking relationships is not an isolated occurrence, but, as Aero well knows, is increasing more and more as businesses seek to extend their trading relations to other parts of the world. Hence, uniform banking and payment procedures must be followed and, as it relates to this issue before the Court, those uniform procedures require that a standby letter of credit will guarantee payment to the beneficiary under its specific terms and conditions.

**A. HSBC Is A Well Known And Established Financial Institution.**

Since its initial letter of credit, posted in October 2004, was to expire, IRC recently provided the Court with a new letter of credit for the Amended Judgment entered in October 2004. ("Exhibit A"). IRC will obtain an additional letter of credit for the recently entered Amended Judgment and such is to be issued by the same bank. The original letter of credit in October 2004 was issued by Wells Fargo Bank; however, IRC's banking relationships have changed since that time and, through the supplier of the products that were at issue in this action, Intex Trading Ltd., the present letter of credit was obtained through Hong Kong and Shanghai Banking Corporation Limited, located in Hong Kong.

Attached as Exhibits B through F are excerpts from the webpage for HSBC, found at www.hsbc.com. HSBC Holdings plc, the parent of the issuing bank, is incorporated in the United Kingdom and has over 9,800 offices throughout the world. (Exhibit "B"). The HSBC "Group" has total assets in excess of $1,467 billion, with pretax profits of $10,640 million. (Ex. "C").[1] The two largest subsidiaries, besides Hong Kong and Shanghai Banking Corporation Limited, are HSBC Bank USA N.A., located in New York, and Household International, Inc.

---

[1] The issuing bank itself in Hong Kong has over $239.6 billion in assets. (Declaration of Anthony M. Mastrangelo, ¶6, filed concurrently herewith).

4825-6933-1712.1 3

located throughout the U.S. (Exhibit "D"). In fact, both HSBC North America Holdings Inc. and HSBC Finance Corporation have offices located in Prospect Heights, Illinois. Both of these entities provide financial services throughout the United States (Exhibit "E").[2] Hence, rather than a small, unknown banking institution, HSBC is well known and has received international recognition for its banking and financial services from a myriad of organizations and publications, including *Forbes* magazine. (Exhibit "F").

Thus, it is clear that the issuing bank is a well-known and respected financial institution, with significant assets. Moreover, any complaint by Aero simply because of the "foreign" ownership would be disingenuous given its own ownership and banking relationship. Aero's own bank is Canadian Imperial Bank of Commerce. Aero itself is owned by Aero Products Holdings, Inc., whose principal shareholder is Investcorp, an offshore investment banking company operating primarily through Investcorp Bank B.S.C., a bank chartered in the Kingdom of Bahrain. (Exhibit "G"). It would be puzzling indeed if Aero, whose own ownership is offshore and presumably is very familiar with international commerce and banking, would object to the issuing bank solely because the bank is located in Hong Kong.

    B.    **There Is No Prejudice To Aero From This Letter Of Credit.**

As noted above, letters of credit are governed by a number of rules and regulations throughout the world. In addition, the International Chamber of Commerce ("ICC") publishes rules relating to the conduct of trade and payments, including the *Uniform Customs and Practices for Documentary Credits* ("UCP500"). The ICC's *Uniform Customs and Practice for Documentary Credits*, and has been in force since January 1994. Another publication,

---

[2] The parent of the issuing bank also recently acquired a major domestic bank, Midland Marine Bank, in New York. (Mastrangelo Dec., ¶6).

*International Standby Practices ISP98* ("ISP98"), reflects the generally accepted practice and usage of standby letters of credit and has been in force since January 1999.

Attached hereto as Exhibit "H" are excerpts from UCP500. As set forth in Article 1, these rules are applicable where, as in the letter of credit at issue, they are incorporated into the text of the "credit." The "credit" is considered a separate transaction and is not subject to any claims or defenses as between the applicant and the issuing bank or beneficiary. (Article 3.) Thus, Aero's "concern" regarding the fact that the applicant for the letter of credit is IRC's supplier is of no moment. (See also, Mastrangelo Dec., ¶4). Moreover, an irrevocable credit, such as a standby letter of credit, can neither be amended nor canceled without the agreement of the beneficiary. (Article 9, d, i.). Accordingly, once issued, the applicant, no matter who it may be, cannot modify the terms of the letter of credit without Aero's consent.

Attached hereto as Exhibit "I" are excerpts from ISP98 which applies specifically to standby letters of credit (Rule 1.01) and provides that a standby letter of credit is an "irrevocable, independent, documentary, and binding undertaking when issued … " (Rule 1.06). Since it is independent, the enforceability of the issuer's obligation <u>does not</u> depend on either the issuer's right or ability to obtain reimbursement from the applicant <u>or</u> the beneficiary's right to obtain payment from the applicant. (Rule 1.06c). Thus, just as under UCP500, Aero's ability to collect on the letter of credit cannot be affected by issues as between the applicant and the issuing bank.

Most importantly, under Rule 2.01a, the issuer undertakes to honor a presentation of the letter of credit that appears in its face to comply with the credit's terms and conditions. Accordingly, HSBC has agreed to honor the presentation of the letter of credit if the terms and conditions therein are met and Aero may present the letter of credit at any bank in the United States.

The foregoing is confirmed in the declaration of Anthony M. Mastrangelo, Vice President and Manager of the International Department of American Business Bank in Los Angeles and with over twenty-two years of experience in international finance. The agreement between the applicant and the beneficiary outlines the transaction and is set forth in the letter of credit filed with the Court. The letter of credit is drafted in accordance with the ICC rules and the credit obligates the issuer to pay or honor the letter of credit when presented by the beneficiary in accordance with the term, conditions and procedures outlined therein.[3] (Mastrangelo Dec., ¶ 3).

Under the letter of credit, the issuing bank, here HSBC, assumes the full obligation to pay the beneficiary upon the presentation of the documents specified in the letter of credit. The issuer is obligated to pay upon presentation of documents that conform to the requirements of the letter of credit. (See, e.g., UCP500, Article 3, a, b; Article 4). The applicant has tendered to the issuing bank cash or collateral so as to secure the issuer the funds necessary for the reimbursement of the obligation to the beneficiary. Thus, upon presentation of the letter of credit, and as with any letter of credit, compliance with the terms and conditions thereof, the letter of credit will be honored and the sums paid to the beneficiary. (Mastrangelo Dec., ¶ 5).

The foregoing is applicable throughout the world. Aero seems to believe that a bank located outside of the U.S. would simply ignore international banking obligations if it so chooses and could leave it without recourse. First, HSBC is well established, well known and respected. (Mastrangelo Dec., ¶ 6). Second, the effect of such a decision would affect the bank's ability to transact business throughout the world since it would be disregarding the rules by which all transactions are governed. (Mastrangelo Dec., ¶ 5). Third, there is no requirement in Local Rule, LR65.1 (b)(4) regarding the location of the bank that issues a letter of credit, contrary to the

---

[3] As noted previously, Aero has not informed IRC of any objection to the terms, conditions or procedures outlined in the letter of credit itself.

rather precise rules governing sureties under a supersedeas bond. Finally, Aero's entire complaint is based on mere conjecture, without any basis in fact or law.

## II.

## CONCLUSION.

For the foregoing reasons, defendant IRC respectfully requests that the Court reject Aero's request and permit IRC to obtain the appropriate letter of credit, in compliance with LR65.1 (b)(4), without restriction as to the location of the issuing bank or the applicant.

Respectfully submitted,

**LEYDIG, VOIT & MAYER, LTD**
MARK E. PHELPS
M. DANIEL HEFNER

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
DAVID N. MAKOUS (Cal. Bar No. 82409)
THOMAS S. KIDDÉ (Cal Bar No. 61717)

DATED:   November 17, 2005       By:  s/ Mark E. Phelps
                                      Mark E. Phelps
                                      Attorneys for Defendant and Counterclaim Plaintiff
                                      Intex Recreation Corp.